WILLIAM H. BAIN *vs.* HYMAN I. ATKINS & another.

Suffolk. March 18, 1902. — April 3, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Equity Jurisdiction*, Bill to reach and apply. *Insurance against Liability.* *Trust.*

One holding a judgment against a building contractor, who has become bankrupt, for injuries received through the negligence of one of his workmen, cannot maintain a bill in equity to reach and apply the insurance money from a policy held by the contractor against such accidents, if before the bill was filed the insurance company had paid the contractor a sum of money in final settlement of its liability in good faith and without knowledge of the contractor's financial condition. *Whether*, if the bill had been filed before the payment and while there was an existing obligation from the insurance company to the contractor, the plaintiff could have compelled the application of that obligation to the satisfaction of his claim, was not considered.

Insurance money due under a policy against liability to third persons does not constitute a trust fund for the benefit of the person whose injury caused the liability.

BILL IN EQUITY, filed January 19, 1898, and amended February 12, 1901, by an infant, by his mother and next friend, having a judgment against the defendant Atkins for $7,000, wholly unsatisfied, to reach and apply insurance of $5,000 under a policy issued to the defendant Atkins by the defendant the Union Casualty and Surety Company toward the payment of the plaintiff's judgment.

The case came on to be heard before *Morton*, J., who, with the consent of the parties, reserved it for the consideration of the full court, such decree to be entered as equity and justice might require.

Certain facts were agreed to by the parties before the com-

missioner appointed to take testimony. It appeared, that the defendant Atkins was engaged as a contractor and builder in putting an additional story on a certain building on North Russell Street in Boston, and was in control of the work there; that the material used consisted chiefly of brick, and that one of the workmen of the defendant Atkins allowed a brick to fall from the staging used in the work, and the brick struck the plaintiff, a boy of ten years, on the head. The judgment alleged in the bill was obtained in an action of tort brought for injuries thus caused.

The justice made the following findings of fact: The accident occurred while the plaintiff was in the street near the sidewalk next the building where the defendant Atkins and his men were at work. The plaintiff was passing diagonally across the street toward the building. After the verdict, the defendant insurance company disputed its liability to the defendant Atkins under the policy, on the ground that he had not fenced the sidewalk, and had not obtained a permit, as required by the ordinances. The defendant Atkins had put up obstructions at each end of the building on the sidewalk, and there were one or two heaps of bricks and sand along the edge of the sidewalk. Atkins had obtained a permit from the proper authorities August 19, 1895. The insurance company assumed the defence of the action, having the right to do so under the policy. It offered the plaintiff, in behalf of the defendant Atkins, $3,000 in settlement. This was refused by the plaintiff, the case proceeded to trial, and the plaintiff obtained a verdict for $7,000 in November, 1897. A motion for a new trial was made, which was overruled March 31, 1899, and exceptions, filed December 14, 1897, were allowed, but were subsequently dismissed for want of prosecution. Judgment on the verdict was entered for the plaintiff, and execution issued on December•4, 1899.

The attorneys of the insurance company continued to act as counsel for Atkins until January 14, 1898, when, by direction of the company, they withdrew. On January 10, 1898, the insurance company made a settlement with the defendant Atkins for any and all liability to him by it under the policy for the sum of $3,000 in cash. This settlement was made in good faith on the part of the insurance company. It gave the plaintiff no

notice of the proposed settlement and it received from the plaintiff no notice forbidding it to settle. It had no notice that this bill was contemplated, or of the bringing of it, until it was actually brought.

At the time of the settlement a judgment had been obtained against Atkins for $185, and he had been cited into the poor debtor court on execution. But this matter was then in process of settlement, and afterwards was settled. Later other demands proceeded to judgment and execution against him; but these also were paid. It did not appear that the insurance company knew of these demands. If it had not been for the judgment constituting the plaintiff's claim in this case the defendant could have gone on with his business of contractor and builder. Since the judgment, and in consequence thereof, he had gone into bankruptcy. The insurance company had no actual knowledge of the defendant's financial condition at the time of their settlement with him. The settlement was not made for the purpose of enabling Atkins to avoid his liability to the plaintiff, or for the purpose of enabling the insurance company to avoid its liability, if any, to the plaintiff to the full amount of its policy. It was made as in the ordinary course of business between two parties, one of whom wanted to get all he could, up to the full amount of his demand, and the other of whom wanted to settle for as little as it could without injuring its reputation for fair dealing with those who insured with it. Atkins put into his business the money which he received, and used it in paying bills and in other ways, but did not use any of it to pay the plaintiff's demand. A consequence of the settlement was that the plaintiff had been unable to collect his judgment in whole or in part.

*W. B. Grant*, (*T. H. Buttimer* with him,) for the plaintiff.

*R. W. Nason*, for the defendant insurance company, was not called upon.

BARKER, J. It is now settled by the findings and the agreed facts that when the plaintiff began this attempt to reach in liquidation of his claim against Atkins a supposed obligation to Atkins on the part of the Union Casualty and Surety Company that obligation was no longer in existence. The bill was filed on January 19, 1898. Nine days before that date, the supposed

obligation, disputed by the company, had been ended by an actual payment of money then made by the company to Atkins on a settlement made in good faith on the part of both and without notice to either of any claim on the part of the plaintiff in the obligation or founded upon it. The settlement was not made for the purpose of enabling Atkins to avoid his liability to the plaintiff nor of enabling the company to avoid any liability to the plaintiff. When it was made the company had no knowledge of Atkins' financial condition. The settlement is found to have been made as in the ordinary course of business between two parties one of whom denied all liability and wanted to settle for as little as it could without injuring its reputation for fair dealing with those who insured with it and the other of whom wanted to get all he could up to the full amount of his claim. Atkins put into his business the $3,000 which he received in the settlement, and had it not been for the judgment of $7,000 afterwards recovered against him by the plaintiff in the action of tort for personal injuries then pending Atkins could have gone on with his business. He went into bankruptcy in consequence of that judgment, and has paid nothing upon the judgment and the plaintiff has been unable to collect the judgment in whole or in part.

We do not consider whether if when the bill was brought the company had been under an existing obligation to indemnify Atkins against the plaintiff's demand the latter could have compelled in equity the application of that obligation to the satisfaction of his claim against Atkins. The fact that when the plaintiff sought the aid of an equity court there was no such obligation is conclusive against the contention that there was an equity springing from such an obligation.

Therefore the plaintiff is compelled to contend that the obligation of the company upon the happening of the accident constituted a fund for the benefit of the plaintiff impressed with a trust for him ; that such a trust fund could be paid to Atkins if at all only to reimburse him after he had satisfied his own liability to the plaintiff and that the company's settlement with Atkins without the consent of the plaintiff was in the company's own wrong and void as to the plaintiff.

The essence of this contention, without which no part of it

can stand, is that the insurance constituted a trust fund for the benefit of the plaintiff, and for this there is no ground.

The only parties to the contract of insurance were Atkins and the company. The consideration for the company's promise came from Atkins alone, and the promise was only to him and his legal representatives. Not only was the plaintiff not a party to either the consideration or the contract, but the terms of the contract do not purport to promise an indemnity for the benefit of any person other than Atkins. The policy only purports to insure Atkins and his legal representatives against legal liability for damages respecting injuries from accidents to any person or persons at certain places within the time and under the circumstances defined. It contains no agreement that the insurance shall enure to the benefit of the person accidentally injured, and no language from which such an understanding or intention can be implied. Atkins was under no obligation to procure insurance for the benefit of the plaintiff, nor did any relation exist between the plaintiff and Atkins which could give the latter the right to procure insurance for the benefit of the plaintiff. The only correct statement of the situation is simply that the insurance was a matter wholly between the company and Atkins, in which the plaintiff had no legal or equitable interest, any more than in any other property belonging absolutely to Atkins.

Most of the cases cited in support of the plaintiff's contention are entirely wide of the mark. In all of them the obligation which the plaintiff sought to apply to the extinguishment of his demand existed when he brought his suit.

In *Anoka Lumber Co.* v. *Fidelity & Casualty Co.* 63 Minn. 286, *Hoven* v. *Employers' Liability Assurance Co.* 93 Wis. 201, and *Fritchie* v. *Miller's Pennsylvania Extract Co.* 197 Penn. St. 401, the liability of the insurer was sought to be reached by process of garnishment. In *American Employers' Liability Ins. Co.* v. *Fordyce*, 62 Ark. 562, and *Fidelity & Casualty Co.* v. *Fordyce*, 64 Ark. 174, the question was whether the insured must first pay the judgment in favor of the employee before an action could be brought upon the policy. In *Fenton* v. *Fidelity & Casualty Co.* 36 Ore. 283, the action against the insurer by a surgeon who had attended an injured employee was allowed because of an assignment to the plaintiff of the cause of action. In *Embler* v. *Hart-*

*ford Steam Boiler Inspection & Ins. Co.* 158 N. Y. 431, the decision was that a suit could not be maintained by an assignee of the administratrix of an employee who had been killed by an explosion against the insurer upon a policy issued to the employer. The decision was put by the majority of the court upon the ground that there was no such relation between the employee and his employer, and no such privity on the part of the employee to the contract of insurance as gave him or his representatives a right of action upon the policy of insurance. It is to be noted that this policy was written before the enactment of the N. Y. St. 1892, c. 690, § 55, which authorizes an employer to take out insurance for the benefit of his employees. The case of *Beacon Lamp Co.* v. *Travellers Ins. Co.* 16 Dick. 59, was overruled by the court of last resort, which held that the obligation of the insurer was with the employer only and left the person who had the claim for damages on account of the accident to rely only on obligations from the insurer to the employer existing when the bill was brought. *Beacon Lamp Co.* v. *Travellers Ins. Co.* 16 Dick. 59. *Hunt* v. *New Hampshire Fire Underwriters Association,* 68 N. H. 305, grew out of the reinsurance by a solvent company of part of a fire risk first reinsured in part by a company which became insolvent after the loss by fire; and the right of the original insurer to the fund was a right in equity to avail itself of a then subsisting provision made by his insolvent debtor, the first reinsurer, for the payment of the claim of the original insurer. Neither that case nor those of the class of *Locke* v. *Homer,* 131 Mass. 93, or *Keller* v. *Ashford,* 133 U. S. 610, are put upon the ground of a trust.

If the usual result of insurance against liability for damages respecting accidental injuries to others was to give money to the insured when he was not obliged to compensate the person injured, it would be for the Legislature to say whether such insurance should not be prohibited as contrary to public policy. The insurance written by the policy held by Atkins was in fact permitted by our statutes and for his own benefit and not for that of the persons whose injuries might give them a claim against him. The fact that owing to his bankruptcy the plaintiff's claim cannot be satisfied although he has in fact received the insurance money or a part of it, cannot make that a trust fund which

neither the statute which allowed the contract nor the contract which created the fund impressed with a trust. Atkins had as full a right to settle with the company and to use in his business the proceeds of the settlement as to deal at his will with any other part of his property, and the company had a right to settle with him as it did.

*Bill dismissed with costs.*