Grafton,   }
March 1, 1904. }

## SANDERS *v.* FRANKFORT MARINE, ACCIDENT & PLATE GLASS INSURANCE CO. *& a.*

Where an employer's liability policy provides that in the event of an injury covered thereby the insurer will defend the suit, settle the claim, or pay a specific sum to the insured, and stipulates that the employer shall not adjust the claim or interfere in the proceedings, the insurer, if he elects to defend, is bound to protect the insured against liability at all stages of the litigation, including satisfaction of the judgment to the extent of the agreed indemnity ; and he is not absolved from this obligation by the fact that the insured has not paid the amount of the judgment against him, or is unable to do so by reason of insolvency.

A further provision in such policy, that 'no action shall lie against the company unless brought to reimburse the insured for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue, applies solely to cases where the insurer denies liability for injuries which are made the subject of suit and refuses to defend.

If the judgment in an action for negligence is uncollectable because of the defendant's insolvency, equity may require that the avails of a liability policy held by him be paid by the insurer to the plaintiff, in satisfaction of the latter's claim against the insured.

BILL IN EQUITY, against the defendant Insurance Company and the Strafford Paper Company, praying that the proceeds of an employers' liability policy, issued by the former corporation, be applied upon an unpaid judgment recovered by the plaintiff against the latter company. Facts found, and case transferred without order or rulings from the May term, 1902, of the superior court, by *Pike*, J.

The policy in question was issued in October, 1897, and was to continue in force for one year. Its material provisions are set forth in the opinion. The plaintiff was injured on January 20, 1898, while in the employ of the Paper Company, and brought an action for negligence against that corporation in April, 1899. The case was tried at the November term, 1899, a verdict was returned for the plaintiff, and in May, 1900, judgment was rendered for him in the sum of $9,085.08 damages and $101.64 costs. The liability of the Paper Company for the plaintiff's injuries was one covered by the policy ; and the Insurance Company undertook the investigation of the case and assumed the entire defence of the action, their counsel appearing in behalf of the defendants of record.

The property of the Paper Company was attached upon the plaintiff's writ in the action at law, subject to prior mortgages, and the equity therein was sold to the plaintiff upon execution for the sum of one dollar. At the date of the judgment, the liabilities of the Paper Company greatly exceeded the mortgage indebtedness, and there was no unincumbered property of the corporation applicable to the payment of the plaintiff's claim. At the time this bill was filed, the Paper Company had no property or assets upon which execution could be levied.

The Insurance Company fixed the rate of premiums solely with reference to the class of business carried on by the insured. If an agent had insured an insolvent concern, and the fact had come to the knowledge of the company, the risk would have been declined, as such a line of business is considered extra-hazardous by casualty insurers.

*Streeter & Hollis* (*Mr. Hollis* and *Edward K. Woodworth* orally), for the plaintiff.

*Arthur E. Dennison* (of Massachusetts), for the Strafford Paper Company.

*Leslie P. Snow* and *John S. H. Frink*, for the Insurance Company.

(1) The plaintiff seeks to recover directly of the Insurance Company. He contends that the policy constituted an agreement on the part of the Insurance Company to bear the loss; and that under the circumstances of this case, the actual payment of the judgment by the Paper Company is not a condition precedent to the maintenance of this suit. The Insurance Company relies upon the terms of the express and unambiguous contract as contained in the operative words, and clause 8 of the policy by which it expressly contracted to insure only "against loss from liability for damages actually sustained and paid."

The Insurance Company did not receive any consideration for the risk of insuring an insolvent concern. The rates were fixed with reference solely to the class of business carried on by the insured, and not with reference to the extra hazard of insuring those who should become insolvent before payment of loss. When it was provided in express terms that the Insurance Company should *reimburse* the insured for "loss actually sustained and paid by him," the insurer exercised a legal right to limit its liability to cases of normal risks, where it should have between it and the injured employee an interested and live, and not an indifferent

and defunct, insured; that is, to limit its liability to claims where the risk, like the premium, was fixed by and limited solely to that ordinarily arising in the class of business carried on by the insured, and in respect to which, until paid, the company had the moral support of a solvent insured. *Davis* v. *Insurance Co.*, 67 N. H. 335, 339; *Findlay* v. *Insurance Co.*, 74 Vt. 211; *McIntire* v. *Insurance Co.*, 102 Mass. 230; *Springfield etc. Co.* v. *Insurance Co.*, 151 Mo. 90.

The reason for the insertion of clause 8 in the policy is apparent from the figures of the plaintiff's verdict: such risks are dangerous. One of the first advantages in the proper defence of an action and in the keeping of a verdict within reasonable limits, is to have on the ground a defendant who will have the greatest possible actual interest in the result of the suit. A solvent (unlike an insolvent) insured has an interest in limiting losses as a basis for a low premium rate, and in defending himself against loss in excess of the insurance carried. A solvent insured (unlike an insolvent) has power to assist in the defence and in the limitation of losses, in that influence with employees which comes from personal contact, in a personal knowledge of the facts, in ability to marshal and control evidence and prevent its destruction or distortion, and in holding out inducements of future employment. With insolvency of the insured, and the consequent cessation of business and employment, follows not only a natural loss of interest and power, but danger of collusion.

(2) In New Hampshire, in actions at law under facts similar to the case at bar, "it is held by a preponderating weight of authority, that when the condition of a bond is simply to save the obligee harmless from a debt or liability, it is not broken until the obligee has been compelled to pay, or has been otherwise damnified." *Conner* v. *Bean*, 43 N. H. 202, 206. See, also, *Lyman* v. *Lull*, 4 N. H. 495; *Haseltine* v. *Guild*, 11 N. H. 390; *Tufts* v. *Hayes*, 31 N. H. 138; *Osgood* v. *Osgood*, 39 N. H. 290. Our courts of equity, however, have administered relief when from all the circumstances they ought in equity and good conscience to do so.

The explicit agreement in the case at bar repels any presumption of an implied promise by the Insurance Company to pay Sanders. Neither law nor equity will by implication raise a promise by the Insurance Company to Sanders, greater than the promise with express limitations which was made to the Paper Company. The policy cannot by any strained construction be deemed to give rise to a promise by implication that the insurer will pay a third party or stranger, when it will not pay the Paper Company. There is no justice or equity in holding that the Insurance Company, under its policy, should pay a claim which the same policy

expressly provides it shall not be bound to pay—a claim for the payment of which it never received any consideration. The doctrine of subrogation is a benevolence, but it never goes to the extent of compelling an insurer, against his express contract, to carry extra-hazardous risks for normal premiums, simply because a third party is unfortunate.

Let us read into the contract interpreted in the leading case of *Keene Savings Bank* v. *Herrick*, 62 N. H. 174, clause 8 of the policy in this case. A borrows money of B, procures C to sign with him as surety, gives C a mortgage on his house as indemnity against loss, and then sells the house to a *bona fide* purchaser, subject to the mortgage. In case of failure to pay and insolvency of A and C, the law gives B a right by subrogation to have the security set over to him. But suppose it had been expressly provided in the condition of the mortgage, that in case of the mortgagee's insolvency, so that he suffered no actual loss, the mortgage was to be void; or, what is tantamount to the same thing, suppose it had been provided that "no action shall lie to enforce the lien under this mortgage unless it shall be brought by the grantee *himself*, to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment thereon." Equity would not annul this express contract of the parties, on the faith of which the purchaser of the land held it.

Equity jurisdiction is a broad blanket to cover almost every lameness of the law to enforce rights growing out of contractual relations and the equitable situation of the parties; but in no instance in the multitude of decisions has this benign jurisdiction been extended to modify the express contracts of parties, however unwise they may have been, if they are not so unreasonable as to be tainted with fraud. Much less have courts of equity shown a disposition to interfere with the right of any party to protect himself by express contract from dangerous contingencies. In the absence of fraud, the situation of the parties can never be such as to call for the exercise of equity jurisdiction to annul an express contract.

(3) The position of the plaintiff is, that "the policy in question is a contract of indemnity and, in effect, a provision made by the insolvent employer for the ultimate discharge of the liability of the defendant Paper Company to the plaintiff." To sustain this proposition, counsel digest six cases, in each of which the language of the policy is so different as to clearly distinguish it from the case at bar. *Anoka Lumber Co.* v. *Company*, 63 Minn. 286; *Hoven* v. *Company*, 93 Wis. 201; *Fenton* v. *Company*, 36 Or. 283; *American etc. Co.* v. *Fordyce*, 62 Ark. 562; *Ross* v. *Company*, 56 N. J. Eq. 41; *Pickett* v. *Company*, 60 S. C. 477.

Counsel are evidently conscious that these cases are clearly distinguishable from the one at bar, both in the operative words of the policy and the presence of clause 8. They contend that "indemnity against *loss* from liability" means the same as "indemnity against *liability*." The only argument which they make to sustain their assumption is that "the purpose in all the cases is insurance; it is now a well known class of insurance; is called employers' liability insurance; and its object is indemnity against liability." This argument assumes that contracts in the case of accident insurance have taken a stereotyped form, which is no longer subject to modification to fit the express intention of the parties; and if the parties attempt to control their rights and liabilities by express stipulations, they are to be met by rules of construction which will reduce their contract to that stereotyped form and thus effectuate the purpose which, regardless of the actual and expressed intention, the parties should have had in mind, namely, indemnity against *liability*. But the authorities are to the effect that contracts of insurance are to be construed under the same rules as other contracts. *Stone* v. *Insurance Co.*, 69 N. H. 438; *Merrill* v. *Insurance Co.*, 91 Wis. 329; *Kasten* v. *Casualty Co.*, 99 Wis. 73.

It is contended that clause 8 is either inconsistent with the rest of the policy, and should therefore be disregarded, or that it should be construed only as securing to the Insurance Company a *bona fide* trial of the issue. Clause 8 does not in any sense purport to provide against a breach of that part of the contract relating to the defence of suits. There is nothing in the context of the policy to indicate such a purpose. On the other hand, whenever in the policy the word "loss" is used, it clearly has the same signification, namely, loss from liabilities, while the expense of defending suits is in every instance referred to either as "expense" or "cost." The word "loss" in the phrase of clause 8, "as respects any loss under this policy," must logically have the same meaning and construction as when used a little earlier in the operative words of the policy, to wit: "loss from common-law or statutory liability on account of damages for bodily injuries," etc.

If the parties to the contract had in mind simply the securing of a *bona fide trial*, it is scarcely conceivable that they would have used the language in clause 8. It would have been very simple to have provided that "no action shall lie against the company as respects any loss under this policy unless it should be brought after a *bona fide* trial of the issue." If such was the intention, the further language which prohibits such an action, except to "reimburse him for loss actually sustained and paid by him in satisfaction of the judgment," was wholly unnecessary and in direct conflict with the interpretation claimed for the plaintiff. We submit

that the construction we place upon clause 8 in connection with the operative words of the policy is consistent with every other part of the contract, and constitutes a plain and simple provision to protect the insurer against the extra-hazardous risk of insuring a company which is insolvent, or may become so before payment of the loss.

(4) *Beacon Lamp Co.* v. *Insurance Co.*, 61 N. J. Eq. 59, is a misapplication of the doctrine of an earlier case (*Klapworth* v. *Dressler*, 13 N. J. Eq. 62) to a state of facts which it did not fit. The operative words and clause 8 were almost indentical with those in the case at bar. In order to carry out what they deem to be the "manifest right and justice" of the case, the court ignore the express contract of the parties as of no sort of consequence (except so far as it establishes a relationship of debtor, creditor, and surety), and adopt counsel's argument as their own view, as follows: "The case appears from an equitable standpoint precisely as if there were no contractual relations between the Insurance Company and the Lamp Company, and the attitude of principal and surety between those parties arose, as well it might, and often does arise, out of the bare facts." Following this line of reasoning to its logical conclusion, the aid of a scrivener and the advice of a counselor in the drafting of legal papers is a hollow farce; a deed is a deed, a policy of insurance is a policy of insurance, and it is wholly immaterial with what care parties attempt to limit and define their rights and obligations by a written contract. The court held the insurer liable to the amount limited in the policy, without regard to the sum actually paid by the insured. It is not surprising that the decision was overruled in this regard by the court of last resort.

*Travellers Ins. Co.* v. *Moses*, 63 N. J. Eq. 260, is the only case to be found which is exactly parallel to the one at bar. There is no essential difference in the language of the policies. The property of the insured had been transferred to a trustee in bankruptcy, which was held to be actual payment to the extent of the creditors' percentage, and to that extent the trustee was entitled to enforce it against the Insurance Company. The court say: "The obligation of the Insurance Company was with the Lamp Company only, and is explicitly defined by the contract which limits it to. such sum, not exceeding $5,000, as the Lamp Company may have actually paid in accordance with the policy. No person claiming under this contract can enforce any larger obligation; for it rested wholly within the power of the contracting parties, subject only to public law, to fix the bounds of liability. The claim of the trustee . . . must have the same bounds."

*Hunt* v. *Association*, 68 N. H. 305, is claimed to be a complete

answer to the foregoing decision, upon the erroneous assumption that the premium paid by the insured in the case at bar was equivalent to the loss sustained by the employee, whereas it was equivalent only to the loss which "should be actually sustained and paid" by the Paper Company. In *Hunt* v. *Association*, insolvency was a "mere accident," whereas in the case at bar it was a contingency against which the insurer expressly provided. The reasoning of *Hunt* v. *Association* proceeds upon the basis of express language giving the insured an equitable interest in the policy; while the contract in the case at bar is one of indemnity in favor of the Paper Company alone, to which Sanders was in no way a party and in which he had no interest.

That the employee has no interest in the policy, legal or equitable, was expressly decided in *Travellers Ins. Co.* v. *Moses, supra;* and this view was indorsed in *Bain* v. *Atkins*, 181 Mass. 240, which was a proceeding in equity to compel the Insurance Company to pay the plaintiff $5,000, a certain sum having been paid to Atkins in settlement of his claim against the insurer. The plaintiff was employed by Atkins and recovered a judgment against him for personal injuries, which was uncollectable by reason of his bankruptcy. The court say: "The only parties to the contract of insurance were Atkins and the company. The consideration for the company's promise came from Atkins alone, and the promise was only to him and his legal representatives. Not only was the plaintiff not a party to either the consideration or the contract, but the terms of the contract do not purport to promise an indemnity for the benefit of any person other than Atkins. The policy only purports to insure Atkins and his legal representatives against legal liability for damages respecting injuries from accidents to any person or persons at certain places and within the time and under the circumstances defined. It contains no agreement that the insurance shall inure to the benefit of the person accidentally injured, and no language from which such an understanding or intention can be implied. Atkins was under no obligation to procure insurance for the benefit of the plaintiff, nor did any relation exist between the plaintiff and Atkins which could give the latter the right to procure insurance for the benefit of the plaintiff. The only correct statement of the situation is simply that the insurance was a matter wholly between the company and Atkins, in which the plaintiff had no legal or equitable interest, any more than in other property belonging absolutely to Atkins."

PARSONS, C. J. The plaintiff has recovered judgment against the defendant Paper Company for some $9,000. The Paper Com-

pany have not paid the judgment and have no property upon which a levy can be made, but they hold a policy of insurance issued by the defendant Insurance Company covering their liability for the injury which constituted the plaintiff's cause of action, to the extent of $5,000.

The obligations imposed upon the insurer by the policy contract are in dispute. The plaintiff claims it constitutes upon the facts a subsisting obligation upon the Insurance Company to pay $5,000 to the Paper Company, and he contends that upon equitable grounds the money should be paid to him. The Paper Company, so far as appears, make no claim to the money, nor do they object to a payment to the plaintiff. If the Insurance Company are under an existing obligation to pay $5,000, it is immaterial to them whether they pay it to the Paper Company or to the plaintiff. The Paper Company cannot object to a decree for a payment of the money to the plaintiff in discharge *pro tanto* of his judgment against them, for thereby they are relieved from loss or discharged from liability to that amount, which is all they can claim under any construction of the policy. The Insurance Company concede the validity of the policy, that it covers the injury for which the Paper Company have been found liable, and that the amount of such liability has been judicially determined to be greater than the total claim under the policy. Their position is, that as the Paper Company have paid nothing they have lost nothing, and the contingency upon which the liability of the Insurance Company was made to depend by the terms of the policy has not yet occurred. They rely upon the grant or covenant of the policy by which they "agree to indemnify . . . against loss from . . . liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered by any person . . . and resulting from negligence of the assured," and the further agreement or condition in clause 8: "No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue." Under these provisions, the Insurance Company claim that the only legal obligation resting upon them is to pay to the Paper Company such sum as may have been paid by the insured upon a judgment recovered upon the liability covered by the policy. Two cases similar to the present are cited in which this contention appears to have been adopted upon a similar policy: *Frye* v. *Company*, 97 Me. 241, and *Travellers Ins. Co.* v. *Moses*, 63 N. J. Eq. 260. In the last case, in an earlier decision in the court of chancery, it was held that equity would apply the whole indemnity to the satisfaction of the plain-

tiff's judgment. *Beacon Lamp Co.* v. *Insurance Co.*, 61 N. J. Eq. 59. This view was not followed in the court of appeals, which limited the amount so applied to a sum which the court by a process of reasoning construed had been paid. *Travellers Ins. Co.* v. *Moses, supra.* In *Bain* v. *Atkins,* 181 Mass. 240, which has also been cited by the defendants, the obligation of the insurance company had been performed. The question of the plaintiff's equitable right to compel the application of a subsisting obligation to indemnify against his claim to its satisfaction was not in the case and was expressly excluded from consideration (*p.* 243).

Discussion has been had of the question whether the present contract was one of insurance against damage or of insurance against liability. In the following cases cited by the plaintiff the policies in question were held to be contracts of indemnity against liability: *Fritchie* v. *Company,* 197 Pa. St. 401; *Hoven* v. *Company,* 93 Wis. 201; *Anoka Lumber Co.* v. *Company,* 63 Minn. 286; *American etc. Co.* v. *Fordyce,* 62 Ark. 562; *Fidelity etc. Co.* v. *Fordyce,* 64 Ark. 174; *Fenton* v. *Company,* 36 Or. 283. The phraseology of the agreement or covenant in the policy before the court differs materially from that of the policies construed in those cases. The decisions, therefore, are not directly in point.

If it be conceded that the contract is one of indemnity against damage merely, the question presented would not be whether an action at law is now maintainable by either the plaintiff or the Paper Company, but whether there is power in equity to grant the relief asked. But whether such power exists or not, the indemnitor has the right to perform his contract of indemnity by payment of the claim indemnified against. He may also, if he deems it necessary, stipulate for the right to perform the contract in this way, and may also agree that he will so perform it. If there be any uncertainty as to the right of a creditor to claim payment in equity of one who has agreed to indemnify the debtor against his claim, there is no doubt of his right to do so against one who has assumed the debt or agreed to pay the claim. An agreement to assume a debt is a promise to pay it as the promisor's own debt. *Locke* v. *Homer,* 131 Mass. 93, 109. "If one person agrees with another to be primarily liable for a debt due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled, in equity, to be substituted in his place for the purpose of compelling such principal to pay the debt." *Keller* v. *Ashford,* 133 U. S. 610, 623. If the Insurance Company, by force of the policy and the plaintiff's loss, are now indebted to the Paper Company, it is plainly equitable that such indebtedness should be applied to the satisfaction of the plaintiff's

claim. It is equally clear that equity has power to make such application. *Hunt* v. *Association,* 68 N. H. 305. See, also, *First Nat'l Bank* v. *Hunton,* 70 N. H. 224; *Barton* v. *Croydon,* 63 N. H. 417; *Holt* v. *Bank,* 62 N. H. 551; *Gerrish* v. *Gerrish,* 62 N. H. 397; *Keene etc. Bank* v. *Herrick,* 62 N. H. 174.

These propositions do not appear to be seriously controverted; but the contention is, as has already been suggested, (1) that the insurers have not agreed to discharge the liability, and hence have not assumed the claim, and (2) that they do not now owe the Paper Company anything. The question for investigation is, therefore, the meaning of the policy·contract; and if the converse of either contention is sustained, the plaintiff is entitled to relief.

In addition to the provisions of the policy to which reference has been made and upon which the defendant Insurance Company rely, and which are similar to those upon which the decisions in Maine and New Jersey are founded, the policy contains the following " general agreements, which are to be construed as co-ordinate " with the general covenant of the policy:

" 2. If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, immediate notice thereof shall be given to the company and the company will defend against such proceedings, in the name and on behalf of the assured, or settle the same at its own cost, unless it shall elect to pay to the assured the indemnity provided for in clause A [$5,000].

" 3. The assured shall not settle any claim, except at his own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding without the consent of the company previously given in writing. . . . The assured when requested by the company shall aid in securing evidence and in effecting settlements."

Whether the contracts considered in the Maine and New Jersey cases contained similar stipulations does not appear from the reports of the cases. It is probable that like provisions were contained in these policies, but in neither of these cases is there any discussion or reference to such stipulations as a part of the contract. They stand in the policy at the head of the " general agreements " of which clause 8 is one, and are of course of equal force in modifying or explaining the covenant of which they " are to be construed as co-ordinate, as conditions." In *Anoka Lumber Co.* v. *Company,* 63 Minn. 286,—30 L. R. A. 689, *Hoven* v. *Company,* 93 Wis. 201,—32 L. R. A. 388, and *Fenton* v. *Company,* 36 Or. 283,—48 L. R. A. 770, similar provisions are considered as furnishing evidence that the contract was one of indemnity against

liability. In the case first cited, the court sustain their conclusion, that the contract is one of indemnity against liability, in part as follows: " The company takes upon itself the settlement of loss and the control of all legal proceedings, and the assured is forbidden to settle any claim or incur any expense without its consent in writing. . . . If the plaintiff is forbidden to settle a claim for an accident of this kind, we fail to see how it is imperative upon him to pay a judgment rendered against him upon such a claim, as a condition precedent to his right of recovery. The Insurance Company, by the terms of its own policy, has taken into its own hands the whole machinery for settling such claim, and will not allow the employer to do it." In *Hoven* v. *Company,* the court say: "Again, by one of the conditions, the Insurance Company assumes entire charge and responsibility for the settlement of the loss and of any legal proceedings, and for the payment of the costs thereof. There is no way provided by which it can be relieved of its liability, except by actual payment to the employer of the full amount for which it could in any event become liable." It is further said in the same opinion that this provision with others is " inconsistent with any reasonable theory other than that the contract of insurance is one of indemnity against liability." The provisions in the present policy are, if anything, more stringent and particular in prescribing the obligations assumed by the Insurance Company than the reports of the cases cited indicate that they were in those cases. While from the different language used in the general covenant these cases are not, as already stated, authority for the position that the policy in this suit is a policy of indemnity against liability generally, yet they are authority for the proposition that these provisions are consistent with an intention to assume the liability. By these stipulations, the insurers not only reserve the right to perform their contract of indemnity in a particular way, but agree that they will so perform it.

They agree that upon notice of a suit brought to enforce a claim for damages on account of an accident covered by the policy they will do one of two things: They will (1) defend against the proceedings in the name and on behalf of the assured, or (2) settle the same at their own cost, unless they elect to pay the full amount of the indemnity to the assured. This is an agreement, in performance of their contract of indemnity, (1) to defend, (2) to settle, or (3) to pay the assured. The last two plainly provide for the performance of the contract of indemnity before the assured has suffered loss, in the sense of having been compelled by legal proceedings to pay damages. So far as the agreement to defend involves the relief of the assured from the expense of such

litigation, that agreement also involves the performance of the contract of indemnity by the assumption of the liability indemnified against. The sole question, therefore, is whether by the agreement to defend against the proceedings the insurers also agree to perform their contract by the assumption of the entire liability, within the limits of the contract, in cases where they have assumed the defence.

If " to defend " means " to protect, to secure against attack,"—in short, to successfully defend,—it is perfectly clear that the Insurance Company agree to perform their covenant of indemnity against loss by assuming the liability. This is conceded. But it is claimed that the agreement to defend against the proceedings means merely to contest the suit to final judgment. While in a technical sense to defend a suit is to contest it, the word " defend " also includes the broader meanings above suggested. Web. Dict. If the meaning were, as is claimed, merely the conduct of the litigation until judgment should be rendered, no reason has been suggested why the purpose was not explicitly stated. Having entered upon the defence of the suit, no way is perceived by which (at least, before judgment) the Insurance Company could escape liability, except by settlement with the plaintiff or payment to the assured. The engagement is not merely to contest the suit to judgment, but to " defend against such proceedings,"—meaning, necessarily, all the proceedings in the suit founded upon the claim for damages against the insured. The judgment is a proceeding in such a suit, as also is the execution. After final judgment, payment is ordinarily the only defence open which will defeat further progress in the proceedings—the issuance of execution.

In this case there has been execution upon which the Paper Company's property has been sold. That the amount of the sale was nominal is immaterial. The fact discloses the abandonment of defence by the Insurance Company, their failure to settle the claim, and hence their liability to pay the insured the amount of the indemnity provided, unless it be established that the rendition of the judgment excuses the Insurance Company from further defence of the proceedings. Further evidence to the contrary is to be found in the provisions of the contract that the assured shall not settle any claim except at his own cost, nor interfere in any negotiation for settlement or in any legal proceeding. The substance of these provisions is, that after notice of the suit to the insurer, unless the company pay him the indemnity, the assured's control over the matter ceases; he cannot settle the claim, nor can he conduct or direct the litigation. If the company settle or defeat the claim, the liability under which he labors is assumed

and discharged by the insurer. In every possible event except the defeat of their effort to prevent judgment against the insured, the company agree to perform their contract without the previous payment of anything by the insured. If an exception were intended in this case, it seems probable that it would be plainly stated, or some good reason would be apparent for the different undertaking. None is perceived.

The Insurance Company alone are responsible for the conduct of the suit and for the failure to adjust the claim before judgment. If the intent was that the assured should assume the settlement of the claim when judgment was ordered, it is at least probable that the clause by which he was prohibited from settling any claim or interfering in any legal proceeding would have been limited by the insertion of the words " before final judgment." In the absence of such limitation of this prohibition, or of an express limitation of the agreement to defend, it is reasonable to infer that an express provision to that effect would have been inserted if the parties understood that after the Insurance Company had conducted the suit to judgment they should then stand aside and call in the assured and require him to advance money to pay the verdict, which they would instantly be required to repay to him.

If a correct construction of clause 8 is that the only obligation of the company is to reimburse the insured for money paid to satisfy a judgment obtained against him, there would seem to be a contradiction in terms. The insured's loss from the liability insured against, if he defends the suit himself, would consist of the amount of the judgment and the expense of contesting the claim. *Ross* v. *Company*, 56 N. J. Eq. 41. Having agreed upon an indemnity against all loss, and having especially agreed that the insured should be relieved of all expense of contesting legal proceedings, it is not probable that the parties understood that the performance of this part of the agreement should be dependent upon the caprice of the Insurance Company, without legal remedy to the insured for its non-performance. Neither is it probable that it would have been thought necessary to make the payment of indemnity dependent upon a trial of the issue, when the insurer had in fact tried the issue. Whether the provisions of a contract are reasonable or unreasonable,—whether the engagements into which the parties have entered are such as would probably be made in like circumstances,—is, as the defendants claim, immaterial when the agreement of the parties is one which they have power to make and is declared in plain unmistakable language. But when the evidence of the agreement furnished by the written contract is not plain and unmistakable, but is open to more than one interpretation, the reasonableness of one meaning as compared with the other,

and the probability that men in the circumstances of the parties would enter into one agreement or the other, is competent for consideration on the question what the agreement was which the written contract establishes. *Kendall* v. *Green,* 67 N. H. 557. The substance of clauses 2 and 3 is, that upon notice of legal proceedings founded upon an accident covered by the policy the Insurance Company will take over the management of the suit, assume and discharge the risk, reserving the right at any time to terminate the liability by the payment of the indemnity or such part of it as they might agree upon with the assured, as was done in *Bain* v. *Atkins,* 181 Mass. 240. These clauses apply only upon a loss covered by the policy. If the company proceeded thereunder, they might be estopped to deny their liability. *Glen Falls etc. Co.* v. *Insurance Co.,* 11 N. Y. App. Div. 411.

The purpose and meaning of clause 8 is apparent upon consideration of the situation which the parties must have contemplated as a probable result of their engagements. It is not probable that the parties contemplated and attempted to provide for the contingency of a suit between themselves upon a claim as to which the liability of the Insurance Company was conceded. An inspection of the policy, which is made a part of the case, discloses a " special agreement " B and "general agreements " 4 and 5, to the effect that the policy does not cover certain accidental injuries for which the insured might become liable. Whether the policy covered a particular accident, was a question as to which it could be foreseen controversy might arise. It was therefore within the contemplation of the parties that a suit might be brought against the insured for accidental injuries not covered by the policy. No claim except for immediate surgical relief could accrue against the company without notice of a suit. Upon the receipt of such notice, the company was called upon to recognize or deny liability. If they denied their liability, and refused to perform their contract of indemnity in the manner specified in clause 2, such decision would not be binding upon the assured ; and in a controversy between the parties, the assumption of the defence by the company might be considered to be an admission of liability under the policy. There was no reason why they should defend if not liable. The purpose of clause 8 was, therefore, to provide for the cases, if any should arise, where the company contended the claim arose from an accident not covered by the policy. It was intended to limit the liability of the company to damages ascertained by due course of judicial procedure in cases where they could not conduct the defence without waiving their claim that they were not liable, and as to which, if not liable, they were under no obligation to incur any expense. Its purpose was to prevent collusion between the plaintiff and the assured.

In this case the Insurance Company undertook the investigation of the case, and after suit was brought assumed the entire defence by their counsel and conducted the same to final judgment. The present action is not one respecting a loss by the insured under the policy. The defendants' contention that the assured have lost nothing because they have paid nothing may, so far as the case is concerned, be conceded. The proceeding is not even to enforce the agreement of the policy to assume the liability; but the plaintiff's case stands upon the legal result of the assumption of liability by the company. Because they assumed—in legal effect agreed to pay—the assured's liability to this plaintiff to the extent of $5,000, equity requires them to perform their agreement by payment to him. It may also be conceded, though it cannot be decided in this case, that if the insurers had denied liability for any claim arising out of the plaintiff's injury, or had refused to take charge of the suit, no action could have been maintained against them except by the assured upon payment of a judgment after a trial of the issue. The defendants' construction of the policy may to this extent be correct, but it has no application to the present case.

Counsel for the Insurance Company, in their brief, reach the conclusion that clause 8 does not prevent an action by the assured for breach of the agreement to defend. It is immaterial whether this conclusion is best founded upon a definition of the word "loss,"—upon whether it means "claim for damages" merely, or both that and the cost of litigation,—or upon the ground that the contract cannot be understood at the same time to give a right and prohibit its enforcement. It is sufficient that on one ground or the other clause 8 cannot be construed to prohibit an action for a breach of the contract to defend. If it does not, neither does it prohibit an action for breach of the engagements to settle or pay the indemnity to the assured contained in the same clause. If none of these engagements have been performed, the existence of a subsisting obligation on the part of the Insurance Company is established.

The defendants urge that there is a greater risk of unfavorable verdicts and of greater verdicts in suits like the plaintiff's against the Paper Company when the defendant is insolvent and not a going concern, and that the policy was intended to protect against this risk by providing that there should be no liability for any policy-holder who was unable to pay the judgment. The difficulty with this argument is that it is not the inability to make payment, but the non-payment, which the construction claimed would make material. If it was intended that insolvency at the time of the trial should avoid the policy, a provision to that effect could easily have been inserted.

The insurers chose to protect themselves from that class of business by declining it, instead of providing for the contingency in the policy, or adjusting the premiums charged with reference thereto. The insolvency which prevents payment is insolvency after judgment, and not during the trial, and might, as was the case in *Bain* v. *Atkins*, 181 Mass. 240, be produced by the judgment itself. It does not necessarily follow that because an insured was insolvent he could not arrange for a payment of such a claim. The provision would be entirely ineffective to guard against the risks of insolvency, whatever they are. The Paper Company are not in bankruptcy. There is nothing to prevent their making some payment to the plaintiff, if not more than the dollar which has already been paid by the sale of their property, and which at least, on the defendants' own contention, they are now legally liable to pay. Every dollar paid over by the Paper Company would establish a fresh obligation of the Insurance Company to pay, until the $5,000 limit was reached. Insolvency merely could not be a practical defence against the will of the assured. To effect the purpose for which it is claimed the provision was inserted, it would be necessary to limit the insurers' liability to the reimbursement of the insured for the value of his property sold under execution in a suit upon a claim covered by the policy. It is not probable the object of the provision was a purpose it is so ill-adapted to effect.

Great stress has been placed upon the two decisions upon like policies in New Jersey and Maine. *Frye* v. *Company*, 97 Me. 241; *Travellers Ins. Co.* v. *Moses*, 63 N. J. Eq. 260. In neither of these cases, as has been stated, was any attention given to the stipulations as to the manner in which the contract of indemnity was to be performed, while in the Maine case the parties apparently abandoned these provisions of the contract, for the defence of the original suit was not conducted in accordance with the terms of the present contract, but by the assured and the insurers jointly, and the question of the effect of the assumption of the defence and sole control of the original suit was not and could not have been raised.

The weight of the New Jersey case as an authority is diminished by the opinion in the court of chancery holding the contrary view, which is more in accord with the authorities on the question in this jurisdiction to which reference has been made. Notwithstanding the respect due to the opinions of these courts, the results reached in them cannot be followed in this jurisdiction. The proceeding is in equity and not at law. The facts that the plaintiff is in no way a party to the contract of indemnity, that he paid no part of the consideration, that the contract was one exclusively

between the Paper Company and the Insurance Company for the protection of the former, upon which reliance is placed, are not decisive in equity. In *Holt* v. *Bank*, 62 N. H. 55, Holt was not a party to the mortgage which he sought to enforce. It was not made for his benefit, but to indemnify Gage from his liability as surety. Gage had never been and could not be damnified, because it had been judicially determined that he was not liable to the plaintiff; but Holt's right to the provision that had been made by his debtor for the ultimate discharge of his debt in case the surety paid was maintained. The ground upon which the plaintiff's equitable right to the provision made by his debtor for the ultimate discharge of a claim which might arise against him can, consistently with the authorities in this state, be denied, is not apparent. Neither is it clear that the Paper Company, while unable to maintain an action at law upon the policy without payment of the judgment against them, might not in equity obtain such a performance of the contract of indemnity as would protect them without such prior payment. There are authorities in this state and elsewhere tending to sustain power in equity to compel the specific performance of a contract to indemnify before there has been such a breach of the contract as would sustain an action at law. " In equity," it is said, " the plaintiff need not pay and perhaps ruin himself before seeking relief. He is entitled to be relieved from liability." *Johnston* v. *Association*, L. R. 19 Q. B. Div. 458, 460. See, also, *Hunt* v. *Association*, 68 N. H. 305, and cases cited; *First Nat'l Bank* v. *Hunton*, 70 N. H. 224; *Champion* v. *Brown*, 6 Johns. Ch. 398; *Burroughs* v. *McNeill*, 2 Dev. & B. Eq. 297, 302; *Central Trust Co.* v. *Trust Co.*, 87 Fed. Rep. 23; *Ranlaugh* v. *Hayes*, 1 Vern. 190; *Lacey* v. *Hill*, L. R. 18 Eq. 182; *Wolmershausen* v. *Gullick*, [1893] 2 Ch. 514; *Cruse* v. *Paine*, L. R. 6 Eq. 641,—4 Ch. App. 441; Sto. Eq. Jur., s. 850; Bisp. Eq., s. 331; Lind. Part. 375.

Except for the provision that the damages must be ascertained by a judgment after a trial of the issue (immaterial in this case, because such trial had been had), clause 8 is a mere statement of the law. The surety cannot sue the principal until he has paid the debt; but that does not prevent the interposition of equity to require the principal to pay and save the surety harmless.

But it appears sufficient to rest the decision upon an interpretation of the contract which gives effect to all its provisions, avoids any conflict between them, and is fairly and reasonably inferable from the evidence. The view that the contract means that the Insurance company, after taking control of the proceedings in a suit against the assured, cannot thereafter be discharged except by payment of the indemnity to the assured or securing his discharge

from the claim, is thought to best conform to the intent of the parties, and is adopted. Whether in a case where the company did not so proceed the assured could in any form of procedure obtain any benefit from the contract of indemnity, except upon proof of the payment of damages after a trial of the issue, is not now before the court.

*Decree for the plaintiff.*

WALKER, J., did not sit: the others concurred.