M. Leo Elliott, *Plaintiff in Error,* v. The Belt Automobile Association and C. J. Alyea and F. C. Nichols, *Defendants in Error.*

Opinion Filed June 9, 1924.

1. Where two interpretations equally fair may be given, that which gives the greater indemnity will prevail.

2. A provision in a policy that no action shall lie against the company, unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after trial of the issue, applies only in case the company denies liability and refuses to defend.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment reversed.

*McKay & Withers,* for Plaintiff in Error;

*Shackleford & Shackleford,* for Defendants in Error.

18—Vol. 87.

BROWNE, J.—This is an action on an insurance policy issued to M. Leo Elliott, plaintiff in error, by the Belt Automobile Indemnity Association.

The policy, as read by the ordinary person, would seem, among other things, to insure the owner of an automobile against liability for injuries to persons or property accidently inflicted by the owner, or by any member of his immediate family over 16 years of age. It is because the insurance company does not so regard its contract, that the case is here.

Under the title ''LIABILITY,'' there is a provision, ''Against actual loss sustained by subscriber on account of legal liability imposed upon him on account of bodily injuries (including death resulting therefrom) accidentally inflicted upon any person, while this contract is in force, through the ownership, maintenance or use of said automobile. The liability of this association is limited to not more than $5,000, for injury to, or death of, any one person, and, subject to the same limit for each person, limited to not more than $10,000.00 for any one accident involving injury to, or death of more than one person.''

In the rider attached to and made a part of the policy, are these clauses:

''DEFENSE · 3. The association will also defend in the name and on behalf of the subscriber or other person or persons covered, any suits, even if groundless, brought against the subscriber or other person or persons covered to recover damages on account of such happenings as are provided for by the terms of the two preceding paragraphs, where the loss sustained by subscriber as a result of the judgment, if rendered against the subscriber or other person or persons, would be covered by this policy.

''COSTS 4. In addition to the coverage granted above, the association will also pay the cost and expenses

attendant, upon the investigation, adjustment and settlement of claims, and will reimburse subscriber or other person or persons covered for all costs taxed and paid by subscriber or other persons covered, in any legal proceedings defended by this Association and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the Association's liability as above limited, where the suit is appealed by or with the consent of the Association.''

On February 21st, during the life of the policy, the plaintiff's wife while driving the automobile, inflicted personal injuries on O. D. Knowles, who brought an action for damages against the plaintiff, and recovered a judgment for $3500.00.

The insurance company in accordance with its contract, defended the action, but did not take writ of error, and the judgment stands of record unpaid.

Upon the refusal of the insurance company to pay the judgment, Elliott brought suit against it, in which he alleges his inability to pay the judgment without sacrificing his property at forced sale, and that he is embarrassed in transacting his ordinary business and dealing with his property because of the existence of the unsatisfied judgment.

The defendants demurred to the declaration upon the grounds that it does not allege any actual loss by the plaintiff; the contention being that until the judgment is paid by the plaintiff, the defendants are not liable upon the contract of indemnity.

The demurrer was sustained and the plaintiff obtained a writ of error, and brought the case to this court for review.

Notwithstanding the peculiar language used in the rider under the title ''LIABILITY,'' we cannot see how the

plaintiff below could have alleged, that he had sustained any actual loss, if the policy is good for anything, unless the unpaid judgment against him constitute a loss. What other loss could the insurer have sustained? If the answer be, "that he must have paid the judgment," that would not be a loss, if the policy is with a responsible company. Paying the judgment would not be a loss, but a mere outlay of money that would be promptly repaid to him by the insurance company. At least the insurance company says it would do so.

Money paid to satisfy a judgment, is not a loss, if a responsible person is obliged to reimburse the one against whom the judgment is held and who pays it.

If we adopt the contention of the insurance company, that upon the payment of the judgment by the insured, the company then becomes liable to indemnify him *and will do so,* the insured could sustain no loss.

Handing money to a judgment plaintiff with one hand, and receiving the same amount of money from the insurance company in the other, is certainly not a loss. On the other hand, an unpaid, valid judgment may be very substantial loss to a person against whom it stands. It works a loss of credit, and stands over him with strong hand extended to take from him his property as fast as he acquires any, until the judgment is satisfied.

We do not, however, rest our decision upon the proposition that a judgment against a person is a loss, but we hold that the words "actual loss sustained" as used in the policy and taken in connection with the entire policy are meaningless, and serve only to make the policy uncertain and ambiguous.

This part of the policy must therefore be considered as insuring the owner against "legal liability imposed upon him on account of bodily injuries (including death result-

ing therefrom) accidentally inflicted upon any person, while this contract is in force."

Clause P. of the policy, under the title "SUIT ON POLICY," provides that "no suit or action on this contract for the recovery of any loss or expense covered by this contract arising or resulting from claims upon the subscriber for damages, either for personal injuries or property damage, shall be sustainable in any court of law or equity * * * unless such action shall be brought by the subscriber for loss or expense actually sustained and paid in money by the subscriber after trial of the issue."

This seeks to defer the insured's right of recovery until he has paid in full, the judgment obtained against him.

We cannot reconcile the provisions of the rider under the title "LIABILITY," with Clause P, under the title "SUIT ON POLICY."

If we accept the first and exclude the second, the liability of the insurance company to pay the judgment is clear; if we accept the second and exclude the first there seems to be no liability on the part of the insurance company until the insured pays the judgment in full; and if we consider them together as we must do in construing the contract, the policy is ambiguous and uncertain.

The rule is well established in this jurisdiction that where "two interpretations equally fair may be given, that which gives the greater indemnity will prevail." L'Engle v. Scottish Union & National Fire Ins. Co., 48 Fla. 82, 37 South. Rep. 462; Caledonian Ins. Co. v. Smith, 65 Fla. 429, 62 South. Rep. 595; Queen Ins. Co. v. Patterson Drug Co., 73 Fla. 665, 74 South. Rep. 807; National Surety Co. v. Williams, 74 Fla. 446, 77 South. Rep. 212; Massachusetts Bonding & Insurance Co. v. Grambling, 75 Fla. 409, 78 South. Rep. 337.

Passing from this phase of the case to the next, we find that clauses similiar to these, have received consideration in other jurisdictions, and there is conflict in the authorities,

Some, that seem to us to be founded on the soundest reasoning, hold that where the defendant insurance association undertakes to defend the action and does so, its liability to pay any valid judgment obtained against the insured is established, and if it fails or refuses to pay the judgment, the insured may recover in an action on the policy.

The doctorine is thus stated in Patterson v. Adan, 119 Minn. 308, 138 N. W. Rep. 281, 48 L. R. A. (N. S.) 184: "A provision in a policy that no action shall lie against the company, 'unless it shall be brought by the assured for loss or expense actually sustained and paid in money by him after trial of the issue,' applies only in case the company denies liability and refuses to defend."

The cases that support this doctrine are those of Sanders v. Frankfort Marine, Accident and Plate Glass Ins. Co., 72 N. H. 485, 57 Atl. Rep. 655; Standard Printing Company v. Fidelity & Deposit Company of Maryland, 138 Minn. 304, 164 N. W. Rep. 1022; Reilly v. Linden, 151 Minn. 1, 186 N. W. Rep. 121; Davies v. Maryland Casualty Co., 89 Wash. 571, 154 Pac. Rep. 1116, L. R. A. 1916D 395; American Indemnity Co. v. Fellbaum, (Tex. Civ. App.) 225 S. W. Rep. 873; Elliott v. Aetna Life Ins. Co., 100 Neb. 833, 161 N. W. Rep. 579, L. R. A. 1917C 1061.

In the case of Davies v. Maryland Casualty Co. *supra,* the court said: "The Davies claim against the coal company was long resisted by the casualty company. To reimburse—for such a claim when established by judgment and paid was the purpose of its contract. The judgment

has established that claim. Nothing remains except a form.    The casualty company, in effect, says to Mrs. Davies, that if the coal company will pay her at one end of the desk, the casualty company will repay the coal company at the other end.  Not one thing besides, does it argue, is wanting to its liability except this formula.  On that process it insists, not because, when the coal company shall have first paid and the casualty company shall then have given reimbursement there will result to it a right, claim, or even a salvage interest against the coal company or its assets, but because it wishes the thing done in just that way.  It will pay a moment after, not a moment before, the coal company pays.  If the latter will but get a loan for a few moments from some one else and pay the judgment, then the casualty company will hand it a check perhaps long previously prepared.

"Such mummeries are ill favored by the law.  Technicality, indeed, is not only respectable, but is to be enforced by courts when even a remote right is exposed to danger.  When technicality is invoked, however, to avoid an obligation morally established, the common law usually finds in its arsenal some weapon with which to confront it, and to make that a legal which is already a moral debt."

We are not unmindful that there are respectable authorities that lay down a contrary rule: Fryo v. Bath Gas. & Electric Co., 97 Me. 241, 54 Atl. Rep. 395; Traveler's Ins. Co. v. Moses, 63 N. J. Eq. 260, 149 Atl. Rep. 720; Connolly v. Bolster, 187 Mass. 266, 72 N. E. Rep. 981; Allen v. Aetna Life Ins. Co., 76 C. C. A. 265, 145 Fed. Rep. 881, 7 L. R. A. (N. S.) 958; Goodman v. Georgia Life Ins. Co., 189 Ala. 130, 66 South. Rep. 649.

No benefit will be derived from any analysis or discussion of the authorities that hold either way.  This court must take its stand with one line of authorities or

the other, and we prefer to adopt the doctrine that we think best conforms to the intent of the parties and promotes justice, affords the greatest protection to the insured, and deprives the insurance company of no legitimate protection.

The lower court erred in sustaining the demurrer to the declaration and the judgment is reversed.

TAYLOR, C. J., AND WHITFIELD, WEST AND TERRELL, J. J., concur.

ELLIS, J., dissents.

ELLIS, J., dissenting.

C. J. Alyea and F. C. Nichols were Attorneys-in-Fact for The Belt Automobile Indemnity Association and on December 9, 1920, issued to the plaintiff, M. Leo Elliott, a policy of insurance by which the Company agreed to indemnify him, to a certain amount, against loss from theft of the automobile, and against "actual loss sustained" by him on account of "legal liability imposed on him on account of bodily injuries (including death resulting therefrom) accidentally inflicted upon any person, while said contract is in force, through the ownership, maintenance or use of said automobile". The limit of liability was five thousand dollars for injury to or death of any one person. The policy also contained a property damage clause.

The association in and by the contract of indemnity, agreed to defend "any suits" brought against the plaintiff to recover damages on account of such happenings as were provided for by the terms of the "liability" and "property damage" provisions. It agreed to pay the

"cost and expenses attendant, upon the investigation, adjustment and settlement of claims" and to "reimburse" the plaintiff for all "costs taxed and paid" by the plaintiff in any legal proceedings defended by the Association and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the Association's liability, as above limited, where the suit is appealed by or with the consent of the Association.

There was also a clause in the contract which read as follows: "P. No suit or action on this contract for the recovery of any claim for a fire, theft or *collision* loss shall be sustainable in any court of law or equity until after full compliance by the subscriber with all the foregoing requirements, nor unless commenced within twelve months after such loss or damage occurred, and no suit or action on this contract for the recovery of any loss or from claims upon the subscriber for damages, either for personal injuries or property damage, shall be sustainable in any court of law or equity until after full compliance by the subscriber with all the foregoing requirements, and unless such action shall be brought by the subscriber for loss or expense actually sustained *and paid* in money by the subscriber after trial of the issue, nor unless such action is brought within twelve months after the payment of such loss or expense."

Other clauses which the contract contained need not be referred to as they seem to have no bearing or relation to the point involved in this case.

In February, 1921, while the policy was in force, the plaintiff's wife, while driving the automobile, ran upon and injured O. D. Knowles, who brought an action against the plaintiff for damages for personal injuries and recovered a judgment for thirty-five hundred dollars.

The plaintiff complied with all the conditions as to notice to the Association of the claim and the Association defended the action; but took no writ of error so the judgment stands of record but is unpaid. The plaintiff alleges his inability to pay it without sacrificing his property by forced sale and that he is embarrassed in transacting his ordinary business and in dealing with his property because of the existence of the unsatisfied judgment.

The defendants demurred to the declaration upon the grounds that it does not allege any actual loss by the plaintiff. The contention being that until the judgment was paid by the plaintiff the defendants were not liable upon the contract of indemnity. The demurrer was sustained and the plaintiff took writ of error.

The plaintiff in error says that the liability clause, contained in a "Rider" attached to the policy and referred to above as containing the agreement of the Association to indemnify the plaintiff "against actual loss sustained by subscriber on account of legal liability imposed on him on account of bodily injuries (including death resulting therefrom) accidentally inflicted upon any person," etc., shows an intention of the parties to cast liability upon the Association when the assured became legally liable for the damage resulting from the injuries inflicted. And that if there is any conflict between the provisions of that rider and Clause "P" copied above the provisions of the rider should obtain; or if there is any doubt as to the intention of the parties engendered by those two apparently conflicting provisions, that interpretation should be made which will secure greater indemnity to the assured.

That rule, announced in the decisions of this court cited in the brief of counsel for plaintiff in error, is probably applicable to a cause like the one at bar. The rule may be considered established in this State, at least so far as it

applies to fire and accident insurance.   See Massachusetts
Bonding & Insurance Co. v. Gramling, 75 Fla. 409, 78
South. Rep. 337; National Surety Company v. Williams,
74 Fla. 445, 77 South. Rep. 212; Martin v. Sun Ins. Office
of London, 83 Fla. 325, 91 South. Rep. 363.

An examination of the two clauses, however, seems to me
to preclude the application of the rule for there is no real
nor apparent conflict between them.   The "no action"
clause designated in this opinion by the letter "P" ex-
presssly provides that no action shall be sustainable in
any court of law or equity "until after full compliance by
the subscriber with all the foregoing requirements, and
unless such action shall be brought by the subscriber
for loss or expense *actually* sustained *and paid in money*
by the subscriber after the trial of the issue, nor unless
such action is brought within twelve months after the
payment of such loss or expense".

Assuming this to be a valid agreement three conditions
precedent must be compiled with by the subscriber before
a cause of action against the association in favor of the
subscriber is created.   In a case of this nature where a
third person is injured by the subscriber's negligent
driving of his automobile, or the negligent driving of it
by some one else for whose acts he may be liable, those
conditions are: first, compliance with the requirements
relating to forwarding to the Association every notice,
summons or other process served upon the insured on
behalf of third persons, rendering reasonable assistance
in defending the action and abstaining from assuming
liability or incurring any expense or settling any claim
except at his own cost; second, payment in money by the
subscriber, after trial, of the loss or expense actually
sustained; and third, the bringing of the action within a
certain time after the *payment* of such loss or expense.

The "Rider", containing the "Liability" and "property Damage" clauses, contains the words "Against actual loss sustained by subscriber on account of legal liability imposed upon him on account of bodily injuries (including death resulting therefrom) accidentally inflicted upon any person," etc. So the agreement was that the Association would indemnify the subscriber against actual loss sustained on account of legal liability imposed upon him on account of bodily injuries. accidentally inflicted upon any person. Clause P. required the loss, that is the loss on account of legal liability imposed, to be *paid in money* before action against the Association should be sustainable.

There is no conflict between these two provisions; nor is there any doubt as to their meaning.

It was permissable for the parties to agree that no action should be sustainable against the insurer in favor of the insured until the latter had paid in money the loss imposed by legal liability on account of injuries inflicted upon another by accident; and as I read the policy such was the agreement. See Lorando v. Gethro, 228 Mass. 181, 117 N. E. Rep. 185; Continental Casualty Co. v. Bows, 72 Fla. 17, 72 South. Rep. 278.

Legal liability for damages is imposed upon one so soon as one, by his negligent act, injures another. A judgment does nothing more than merge that liability into a contract of record for the payment of a definite sum. It judicially determines the existence of the liability. See 3 words and phrases, "Liability", p. p. 98-101.

The policy was not a contract of indemnity against "liability for damages" but it was a contract of indemnity against "actual loss sustained" on account of "liability for damages". If there was any doubt about such being the purpose of the agreement it is completely removed by

the language of clause ''P'', which provides that the action against the Association, to be sustainable, should be one for the ''loss or expense actually sustained and *paid in money* by the subscriber after trial of the issue''.

The contract of the insurer was one of indemnity against actual loss sustained on account of legal liability; not a contract to pay all damages with which the insured may be legally charged or which he may be required to pay by reason of any liability on account of injuries inflicted upon another, as were the terms of the policy under consideration in American Employers Liability Ins. Co. v. Fordyce, 62 Ark. 562, 36 S. W. Rep. 105. See Solary v. Webster, 35 Fla. 363, 17 South. Rep. 646.

The distinction is not only pointed out in the Florida case above cited but also in the following, and many others. Finley v. United States Casualty Company, 113 Tenn. 592, 83 S. W. Rep. 2; Fenton v. Fidelity & C. Co., 36 Ore. 283, 56 Pac. Rep. 1096, 48 L. R. A. 770; Lane v. Westmoreland, 79 Ala. 372; Loyd v. Marvin, 7 Blackf. (Ind.) 464; Valentine v. Wheeler, 122 Mass. 566, 23 Am. Rep. 404; Miller v. Fries, 66 N. J. L. 377, 49 Atl. Rep. 674; Weightman v. Union Trust Co., 208 Pa. St. 449, 57 Atl. Rep. 879; Wilson v. Smith, 23 Iowa 252; Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Maryland, 162 Wis. 39, 155 N. W. Rep. 1081, Ann. Cas. 1918C,399; Fidelity & Casualty Co. of New York v. Martin, 163 Ky. 12, 173 S. W. Rep. 367, L. R. A. 1917F, 924.

The plaintiff in error insists that as the defendant Association assumed and conducted the defense of the action it must respond to plaintiff's demand for the payment and cannot require payment thereof by the plaintiff as a condition precedent to the maintenance of an action by him.

Decisions from the states of New Hampshire, Minnesota,

Washington, Texas and Nebraska have been cited in support of the proposition. The proposition is the basis of the dissenting opinion in the case of Fidelity & Casualty Co. of New York v. Martin, supra, and rests for authority, upon the case of Sanders v. Frankfort Marine, Accident & Plate Glass Ins. Co., 72 N. H. 485, 57 Atl. Rep. 655, the first case cited in the brief for plaintiff in error in this case.

In the dissenting opinion referred to Mr. Justice Nunn does not deny the legality of clauses like that contained in the policy in this case, and designated as clause "P", but he asserts that the contract is susceptible of two constructions; one which is favorable to the insured, the other to the insurer. And by an argument which ignores the plain meaning of words, which he says were hidden "away near the middle of the policy" in a "fine-print clause", arrives at a conclusion different to that held by a majority of his associates. He states that the position he takes is not unfair to the Company. The accuracy of that statement depends upon a fact not disclosed by the record, namely: the monetary, or other consideration inducing the parties to enter into the particular form of contract.

It is perfectly conceivable that an insurance company would designate one class of insurance involving indemnity against liability a higher risk than one involving indemnity against actual loss paid in money, and charge premiums accordingly. If there is nothing against public policy in the latter form of indemnity it is difficult to perceive how constructing the latter forms of policy, or contract, to be a character or risk identical with the former is not making a contract for the parties to the injustice of the insurer.

An analysis and discussion of the cases cited by the counsel for plaintiff in error would lead to no beneficial result; as the final determination of the matter would be

nothing more than deciding whether the decisions of the courts of the states above referred to should be accepted in preference to the decisions of the courts of many more states holding in accordance with the views held by the trial court in this case.   Frye v. Bath Gas. & Electric Co., 97 Me. —, 54 Atl. Rep. 395; Traveler's Ins. Co. v. Moses, 63 N. J. Eq. 260, 49 Atl. Rep. 720; Connolly v. Bolster, 187 Mass. 266, 72 N. E. Rep. 981; Allen v. Aetna Life Ins. Co., 76 C. C. A. 265, 145 Fed. Rep. 881, 7 L. R. A. (N. S.) 958; Goodman v. Georgia Life Ins. Co., 189 Ala. 130, 66 South. Rep. 649.

The majority opinion follows the theory applied in the Minnesota and New Hampshire cases, Patterson v. Adan, 119 Minn. 308, 138 N. W. Rep. 281, 48 L. R. A. (N. S.) 184; Sanders v. Frankfort Marine, Accident & Plate Glass Ins. Co., *supra*.   That theory is: that when the Insurance Company takes charge of the defense of the assured in the damage action, as authorized by the provisions of the policy, an ensuing damage judgment against the assured *converts* the policy into an undertaking to indemnify against *liability* and not merely against *loss actually paid*. This theory, however, is adopted in the face of an express provision in the policy denying the insurer's liability except for loss actually paid in money by the assured.

The Supreme Court of Alabama, speaking through Mr. Justice Somerville, said: "It seems to us that their construction of the insurance contract is dominated by an undue regard for the injured stranger, rather than by a consideration alone of the intention and the obligations of the contracting parties.   Such insurance contracts as these may be one-sided and unsatisfactory in their operation, but we know of no principle of law or public policy which forbids their operation exactly as stipulated by the parties, with which, as already stated, a stranger to the

contract has absolutely no concern." See Goodman v. Georgia Life Ins. Co., *supra*.

If the majority opinion is correct then Mr. O. D. Knowles, the injured party, could maintain his action upon the policy of insurance. For if the policy must be construed in the interest of the person injured in the accident then he is the real party in interest.

It is not suggested in the majority opinion that clause "P", or so much of it as expressly states that no action shall be brought on the policy until the "loss" has been "actually sustained and paid in money", is void as against public policy. Indeed such a proposition would be extremely difficult, if not possible, to prove. So the effect of the majority opinion is to write a new contract for the parties and enforce against the Company an agreement that it never made and for which it received no consideration.

If the assured in this case had been a corporation, as in the Alabama case, and had become bankrupt and gone into the hands of a receiver without paying the judgment obtained against it by the insured party the difficulty in applying the principle applied in the majority opinion might be a little more apparent. For to reimburse the corporation for a loss which it never sustained would be awkward under an agreement, valid in all respects, that it should not be done.

In such a case unless it should be held that the injured person, a stranger to the contract, was the real party in interest and had a cause of action in his own name against the insurer, an anomalous proposition, to say the least of it, the proceeds of the policy would go to the corporation's receiver to be distrbuted amongst its creditors in the order of the priority of their claims in which the injured person

might not participate at all. In that case consideration for the injured person would bear no paternalistic fruit.

I am of the opinion that the trial judge correctly sustained the demurrer and that the judgment should be affirmed.