226 So.2d 104 (1969)
Alfred DaCOSTA, Petitioner,
v.
GENERAL GUARANTY INSURANCE COMPANY OF FLORIDA, Respondent.
No. 37871.
Supreme Court of Florida.
July 2, 1969.
Rehearing Denied September 15, 1969.
Thomas A. Horkan, Jr., Tallahassee, and Dunn & Johnson, Miami, for petitioner.
Smathers & Thompson, Miami, for respondent.

ON REHEARING GRANTED
DREW, Justice.
We have before us the question of whether a particular "Protection and Indemnity" marine insurance policy is a policy of indemnity against loss or indemnity against liability. Petitioner's right to recover against Respondent depends upon our determination of that question.
Petitioner was Plaintiff in the trial court and will hereinafter be referred to as Plaintiff. Respondent was the Defendant in supplementary proceedings and will hereinafter be referred to as the Assurer. Plaintiff obtained a final judgment for damages in a personal injury action against the Assured and instituted supplementary proceedings against the Assurer after return of a writ of execution unsatisfied.[1] *105 The Assurer was directed to show cause why it should not pay the judgment under the marine protection and indemnity policy issued to the Assured. The trial court found the policy one of indemnity against loss actually paid by the Assured, rather than against liability incurred. The court held that inasmuch as the Assured had not paid Plaintiff's judgment against it, Plaintiff had no recourse against the Assurer. The District Court of Appeal, Third District, affirmed,[2] citing Stuyvesant Insurance Co. of New York v. Nardelli.[3]
The policy construed by the trial court is entitled "Protection and Indemnity." The initial assuring provision of the policy reads as follows:
The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:
(1) Liability for loss of life of, or personal injury to, or illness of, any person * * *.
(2) Liability for hospital, medical, or other expenses * * *.
(3) Liability for repatriation expenses of any member of the crew * * *.
The following "Actions against Assurers" clause appears in the policy section entitled "General Conditions and/or Limitations."
No action shall lie against the Assurer for the recovery of any loss sustained by the Assured unless such action is brought against the Assurer within one year after the final judgment or decree is entered in the litigation against the Assured, or in case the claim against the Assurer accrues without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim.
The lower court has allowed the one clause implying the lesser coverage  liability for loss actually paid  to control the meaning and nature of the entire policy. The decision, evidently stemming from a misplaced reliance upon the Nardelli case, clearly deviates from our long-established rules of construction for such contracts and insurance policies. The case before us conflicts with the following rule stated by this Court in Elliott v. Belt Automobile Ass'n[4] and established by the numerous cases cited therein: Where two interpretations equally fair may be given, that which provides the greater indemnity will prevail.
The patent ambiguity of the policy before us requires application of the above principle of construction. In Elliott, this Court interpreted a provision within the policy section entitled "liability" as insuring against legal liability imposed upon the insured. On the other hand, the "no action" clause of the contract sought to defer the insured's right of recovery until he had actually paid in full the judgment against him.[5] Faced with what it considered to be irreconcilable provisions rendering the policy as a whole ambiguous and uncertain, the court resolved the ambiguity *106 by interpreting the policy as insuring against liability rather than against loss actually paid by the insured. The lower court, faced with the same ambiguity in the instant case, approved the opposite result, thereby conflicting with the Elliott decision.
In its Per Curiam affirmance the District Court relied solely upon the Federal case of Stuyvesant Insurance Co. of New York v. Nardelli.[6] In Nardelli, the United States Court of Appeals, Fifth Circuit, had before it a Marine Insuring Agreement containing a collision or so-called "full running down" clause. The court interpreted a phrase[7] in the collision clause similar to a phrase appearing in the first above-quoted provision as imposing liability upon the Assurer only if the Assured made some payment toward satisfaction of the judgment entered against him, and only to the amount actually paid by the Assured. We must assume that this interpretation was arrived at upon the policy provision quoted in the footnote herein, for the Court of Appeals in its opinion alludes to no other policy provision which might have suggested a contrary interpretation.[8]
The policy before us presents an entirely different question than that faced by the Court in Nardelli. Here there are present not just one provision which might imply indemnity against loss actually paid by the Assured, but other clauses just as strongly implying indemnity against liability. The lower courts have inappropriately relied upon Nardelli for resolution of these conflicting provisions here in issue.
The initial assuring provision quoted above, although capable of being construed to require payment of the loss by the Assured before accrual of any right against the Assurer, is itself ambiguous and capable of at least two different constructions, depending upon placement of emphasis and punctuation by the reader. We will consider, however, that this particular provision marks the policy as one of indemnity against loss actually paid.
All other policy provisions, or the absence of certain standard clauses, characterize the policy as one of protection against liability. The "Action against Assurers" clause, appearing as a condition and limitation of the policy, purports to require that the Assured sue the Assurer within one year after payment of a claim by the Assured if no final judgment is entered, or within one year after final judgment is entered.
If the Assured failed to pay or satisfy a judgment within one year, assuming this to be a policy of indemnity against loss paid, then the Assured would lose all rights against the Assurer whatsoever, in spite of the fact that the Assurer claims its liability begins only when the judgment or claim is paid. This absurd result reveals that no presumption that the policy is one of indemnity against loss paid can be reasonably implied from this provision.
The presence of a "no action" clause providing that no action will lie against an insurer unless brought for losses actually sustained and paid in money is generally indicative of an indemnity rather than a liability policy.[9] The absence of this type of no action clause in the policy before us likewise indicates that the policy is one of *107 protection against liability rather than against loss actually paid.[10]
Policy provisions requiring notice of accidents and claims, defense of suits by the Assurer, and prohibiting settlements by the Assured, usually indicate a liability rather than indemnity type of policy.[11] Each of these provisions appears in the policy under scrutiny.
The repetitive appearance after the initial assuring provision of fourteen clauses, twelve of which begin with the words "liability for," necessarily gives the policy reader the overall impression that protection is in the nature of liability indemnity rather than loss paid indemnity.
With the exception of the initial assuring provision quoted at the beginning of this opinion, the policy appears to insure against liability rather than against loss actually paid. On the basis of Elliott v. Belt Automobile Ass'n[12] and the rule of construction of such a contract recognized therein, we resolve the ambiguity and confusion in favor of providing the greater indemnity to the Assured  indemnity against liability.
The opinion of the district court is quashed and the cause remanded with instructions that a judgment be entered in behalf of the Petitioner, Plaintiff below.
It is so ordered.
ERVIN, C.J., ROBERTS, CARLTON, ADKINS and BOYD, JJ., and SPECTOR, District Judge, concur.
NOTES
[1] This cause was the subject of an interlocutory appeal wherein the district court upheld the authority and jurisdiction of the trial court to implead the alleged liability insurance carrier of a judgment debtor as a party defendant in supplementary proceedings. 190 So.2d 211 (3rd Dist.Ct.App.Fla. 1966).
[2] DaCosta v. General Guaranty Insurance Co. of Fla., 212 So.2d 923 (3rd Dist.Ct. App.Fla. 1968).
[3] 286 F.2d 600 (5th Cir.1961).
[4] 87 Fla. 545, 100 So. 797 (1924).
[5] "No suit or action on this contract * * * shall be sustainable in any court of law or equity * * * unless such action shall be brought by the subscriber for loss or expense actually sustained and paid in money by the subscriber after the trial of the issue" (emphasis added). Elliott v. Belt Auto Ass'n, 87 Fla. 545, 100 So. 797, 798.
[6] 286 F.2d 600 (5th Cir.1961).
[7] "And it is further agreed that if the vessel and/or property insured shall come into collision with any other ship or vessel and the Assured or the Charterers or the Surety in consequence of the insured vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision * * *." 286 F.2d 600, 602 (5th Cir.1961).
[8] Neither are such clauses evident in further extracts from the policy before the Court in Stuyvesant appearing in an earlier related decision, Nardelli v. Stuyvesant Insurance Co. of New York, 258 F.2d 718 (5th Cir.1958), on second petition for rehearing, 269 F.2d 592 (1959).
[9] 7 J. Appleman, Insurance Law and Practice, § 4261 (1962), and cases cited therein.
[10] Michel v. American Fire & Casualty Co., 82 F.2d 583 (5th Cir.1936); 117 A.L.R. 239-245 (1938).
[11] 7 J. Appleman, Insurance Law and Practice, § 4261 (1962); 117 A.L.R. 239, 245-248 (1938).
[12] 87 Fla. 545, 100 So. 797 (1924).