**Stephen E. WEEKS and Julia G.
Weeks, Plaintiffs–Appellants,**

v.

**BERYL SHIPPING, INC., a corporation and Exxon Corporation, Defendants–Crossclaim Plaintiffs, Crossclaim Defendants,**

**London Steam–Ship Owner's Mutual Insurance Association, Ltd., a corporation, Defendant–Crossclaim Plaintiff–Crossclaim Defendant–Third Party Defendant–Appellee,**

**Parker Drilling Company, a foreign corporation, Defendant–Crossclaim Plaintiff–Crossclaim Defendant–Third Party Plaintiff–Appellant,**

**Uiterwyk Corporation, Third
Party Defendant.**

**Nos. 86–3595, 86–3837.**

United States Court of Appeals,
Eleventh Circuit.

May 18, 1988.

David G. Hanlon, Tampa, Fla., for Parker Drilling.

Roger A. Vaughan, Tampa, Fla., for Weeks.

Carl R. Nelson, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for defendant-crossclaim plaintiff-crossclaim defendant-third party defendant-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

I.

In September 1984, Stephen E. Weeks filed a personal injury suit in Florida state court, naming as defendants Beryl Shipping, Inc. (Beryl) and Exxon Corp. (Exxon). In his complaint, Weeks alleged that he was injured in December 1981 aboard the M/V *Victoria U*, and that the vessel was at that time owned by Beryl and chartered by Exxon. In October 1984, the case was removed to federal district court pursuant to 28 U.S.C. § 1441(a) (1982).[1] Weeks thereafter amended his complaint to add Parker Drilling Co. (Parker) and London Steam–Ship Owner's Mutual Insurance Association, Ltd. (London) as party defendants.[2] The amended complaint alleged that Weeks had been employed by Parker at the time of his injury and that the injury had occurred while he was working, as a borrowed servant, for Beryl and/or Exxon. The amended complaint further alleged that the vessel's owner, Beryl, was insured under a "Protection and Indemnity" (P & I) policy written by London.

Defendant Parker cross-claimed against Beryl, Exxon, and London. Parker then filed a third-party complaint against Uiterwyk Corp. (Uiterwyk), alleging that Uiterwyk had been manager of the M/V *Victoria U* at the time of Weeks' injury. Since Uiterwyk was listed as an additional insured under the P & I policy held by Beryl, Parker named London as a second defendant in the third-party complaint.

In May 1986, London moved the district court, pursuant to Fed.R.Civ.P. 56, for summary judgment on all claims pending against it: Weeks' claim, Parker's cross-claim, and Parker's third-party claim.[3] In its memorandum in support of the motion, London argued that no cause of action had accrued against it because fulfillment of three conditions precedent in the P & I contract had not occurred. These conditions precedent were (1) payment of any claim first by Beryl or Uiterwyk, (2) submission of the claim to London, and (3) submission, at the election of London, of the claim to arbitration. Further, London argued, no direct action could lie against it in its capacity as a marine "indemnity"

---

1. In their petition for removal, the defendants asserted jurisdiction under 28 U.S.C. § 1332 (1982) (diversity of citizenship).

2. Weeks' wife, Julia G. Weeks, was joined as party plaintiff.

3. London moved, alternatively, for an order staying all claims against it pending submission of those claims to arbitration, as required by the terms of the P & I policy. Because the district court granted London's motion for summary judgment, it did not rule on the motion for a stay pending arbitration.

insurer. The district court granted the motion for summary judgment, holding that Weeks and Parker had no right to sue London directly. Weeks and Parker now appeal.

## II.

The parties agree that Florida law governs the question whether appellants can join London in this lawsuit. *See Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488–91 (11th Cir.1986). The parties disagree, however, as to how that law applies to the facts of this case.

In *Shingleton v. Bussey*, 223 So.2d 713 (Fla.1969), the Supreme Court of Florida held that a third party beneficiary under a motor vehicle liability policy could join the insurer in a lawsuit against the insured. *Id.* at 716. The *Shingleton* joinder rule[4] is not limited to the motor vehicle liability insurance context; it has also been interpreted to permit the joinder of a maritime insurer in a suit for maritime personal injuries.[5] *See Quinones v. Coral Rock, Inc.*, 258 So.2d 485, 486 (Fla.Dist.Ct.App.1972). The Supreme Court of Florida has held, however, that *Shingleton* permits joinder only in cases involving "liability," as opposed to "indemnity," policies. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla.1985). The question before us, therefore, is a narrow one: whether the particular P & I policy in this case is a liability policy or an indemnity policy. If it is a liability policy, joinder would be permitted under *Shingleton*, and the district court's order granting London's motion for summary judgment would be in

error. If, on the other hand, it is an indemnity policy, the district court's order was correct.

The Supreme Court of Florida has stated the distinction between a liability policy and an indemnity policy to be as follows. Under a liability policy, the insurer is liable for "damages for bodily injury or property damage for which any covered person becomes legally liable, up to the applicable policy limits." *McCarson*, 467 So.2d at 279. In other words, the insurer must pay the damages if the insured is found liable. Under an indemnity policy, on the other hand, the insurer is liable only for "loss *actually paid*" the injured party by the insured. *DaCosta v. General Guaranty Ins. Co.*, 226 So.2d 104, 105 (Fla.1969) (emphasis added). Thus, actual payment by the insured is a condition precedent to any obligation on the part of the insurer. "The presence of a 'no action' clause providing that no action will lie against an insurer unless brought for losses actually sustained *and paid in money* is generally indicative of an indemnity rather than a liability policy." *Id.* at 106.

Applying these guidelines, we hold that the P & I policy in this case is clearly an indemnity policy. Rule 6 of the insurance contract provides as follows:

In case any Member shall incur any liability or expense [covered by the policy], such Member shall be entitled to recover and the Association out of the funds of the Class shall satisfy and make good such liability or expense, or, if the ship is not entered for her full gross tonnage, such proportion of the said liability or

---

**4.** The Supreme Court of Florida has avoided stating whether the judicially created *Shingleton* rule is a rule of substantive law, i.e., a rule akin to a direct action statute, or merely a rule of procedure permitting joinder pursuant to the real party in interest rule. *See Markert v. Johnston*, 367 So.2d 1003, 1005 (Fla.1978). Some lower Florida courts have concluded that the rule is merely procedural. *See, e.g., Clemons v. Flagler Hosp., Inc.*, 385 So.2d 1134, 1136 (Fla. Dist.Ct.App.1980). We need not resolve this question to dispose of the issue presented in this appeal. We do note, however, that appellants' reliance on case law interpreting direct action statutes in Louisiana and Puerto Rico is unavailing; our focus is, and must be, limited to Flor-

ida's interpretation and application of its *Shingleton* rule.

**5.** The Florida legislature has overruled *Shingleton* with respect to actions accruing after October 1, 1982. *See* Fla.Stat. § 627.7262 (1984). The Supreme Court of Florida upheld section 627.7262 against constitutional attack in *Van-Bibber v. Hartford Accident & Indem. Ins. Co.*, 439 So.2d 880 (Fla.1983). The invalidation of the *Shingleton* rule for actions accruing after October 1, 1982 applies to cases involving maritime insurers. *See National Corporacion Venezolana, S.A. v. M/V Manaure V*, 826 F.2d 6, 7 (11th Cir.1987).

expense as the entered tonnage bears to the gross register tonnage. *Provided always that in the case of a liability actual payment (which shall be made out of monies belonging to him absolutely and not by way of loan or otherwise) by the Member of the full amount of such liability shall, unless the Committee otherwise decide, be a condition precedent to the right of the Member to recover and the obligation of the Association to satisfy and make good.*

(Emphasis added.) If this language does not make the policy an indemnity policy, we do not see how it would reasonably be possible for an insurer to write such a policy.[6] Accordingly, we hold that the district court correctly granted London's motion for summary judgment.

AFFIRMED.

**6.** Appellants note that under Rule 6 of the insurance contract, London may at its discretion pay attorney fees for the insured or settle the claim without requiring prepayment by the insured. Relying on language in *DaCosta,* appellants argue that because London may do these things, the policy is a liability policy. In *DaCosta,* the Supreme Court of Florida stated that "[p]olicy provisions requiring notice of accidents and claims, defense of suits by the Assurer, and prohibiting settlement by the Assured, usually indicate a liability rather than indemnity type of policy." *DaCosta,* 226 So.2d at 107. As should be readily apparent, appellants' reliance on this language is misplaced: nothing in the P & I policy *requires* that London defend suits against the insured, or *prohibits* the insured from settling with the injured party.