[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12970

_____

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee
Cross Appellant,

*versus*

STATE FARM FLORIDA INSURANCE COMPANY,

Defendant-Counter Claimant-Appellant
Cross Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:15-cv-20941-JAL

_____

2                    Opinion of the Court                    20-12970

_____

No. 20-13637

_____

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

*versus*

STATE FARM FLORIDA INSURANCE COMPANY,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:15-cv-20941-JAL

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

The question in this appeal is which of two insurance companies must pay to settle a lawsuit. The first insurance company is Liberty Mutual. It contracted with a company called Riteway to

perform repairs on a house that it had insured. As a condition of hiring Riteway, Liberty required Riteway to purchase liability insurance that named Liberty as an additional insured.

Riteway purchased two policies from a second insurance company, State Farm: a contractors policy and an umbrella policy. State Farm sent Liberty a certificate of insurance referencing both policies. But State Farm failed to draft an accompanying endorsement to formally list Liberty as an additional insured on the policies.

Unfortunately for everyone, instead of repairing the house, Riteway destroyed it. So the insureds sued Riteway and Liberty. They brought direct negligence claims against Riteway, vicarious liability claims against Liberty based on Riteway's negligence, a direct liability claim against Liberty for breaching its contract by failing to repair the house, and other direct liability claims against Liberty as well. State Farm settled the direct claims against Riteway and the vicarious liability claims against Liberty, but it refused to defend or settle the direct claims against Liberty.

That refusal brings us to our current dispute. Liberty settled the insureds' remaining claims against it—specifically allocating the entire settlement amount to the breach of contract claim—and sued State Farm for indemnification of the settlement amount. State Farm denied that it had to cover Liberty because it had never issued an endorsement to Riteway's policy. Citing the certificate of insurance, the district court held that, despite the missing endorsement, Liberty had coverage under the umbrella policy but did not

have coverage under the contractors policy. And coverage under the umbrella policy, the district court said, was limited to Liberty's vicarious liability for Riteway's negligence. Liberty appealed, and we affirmed in part and vacated in part. *See Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.*, 770 F. App'x 475 (11th Cir. 2019). We concluded that the certificate of insurance referenced both the contractors policy and the umbrella policy. On remand, the district court—now analyzing the contractors policy—determined that Liberty had the same coverage as Riteway and that State Farm had a corresponding duty to defend and indemnify. Accordingly, it granted summary judgment for Liberty.

Now State Farm has appealed, presenting us with this case for a second time. After careful consideration and with the benefit of oral argument, we affirm. We conclude that: (1) Liberty's certificate of insurance entitled it to the same coverage as Riteway under the contractors policy; (2) the breach of contract claim against Liberty in the underlying lawsuit (Count Two) was a covered claim; (3) Liberty's settlement sufficiently allocated the settlement funds to require State Farm to indemnify the full amount; (4) State Farm waived any defense based on the exhaustion of its policy limits; and (5) the settlement amount is within the contractors policy's limit because Count Two alleged multiple occurrences that caused the property damage.

## I.    BACKGROUND

As we explained above, this case begins with Liberty's agreement with Riteway to perform repairs as part of Liberty's Contractor Network Referral Program. That agreement required Riteway to purchase liability insurance and name Liberty as an additional insured "against liability arising out of the work or operations performed by or on behalf of [Riteway]." Riteway fulfilled its obligations by purchasing both a contractors policy and an umbrella policy from State Farm. Important to this appeal, the contractors policy covered "those sums that the insured becomes legally obligated to pay as damages because of . . . property damage caused by an occurrence. . . ." The policy defined property damage to include "physical injury to or destruction of tangible property, including all resulting loss of use of that property," as well as "loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property." It defined an occurrence to be "an accident, including continuous or repeated exposure to the same general harmful conditions which result in . . . property damage."

State Farm issued Liberty a certificate of insurance in January 2009 that referenced both policies, identified Liberty as an additional insured, and contained specific disclaimer language claiming that it was "not a contract of insurance." Despite issuing the certificate, State Farm failed to issue an additional insured endorsement adding Liberty to the policy until 2014, when Liberty proffered its certificate as part of a renewed demand for a defense.

Liberty's demand came in response to an underlying lawsuit from two of Liberty's insureds, Regina Suarez and Jorge Sosa. Liberty tasked Riteway with performing repairs on Suarez and Sosa's home. But rather than repair the home, Riteway only caused additional damage, damage so severe that the house eventually had to be razed to the ground. Out of a home, Suarez and Sosa filed suit against Liberty in February 2010. They eventually amended their complaint to add Riteway as a defendant and include a vicarious liability claim against Liberty based on Riteway's acts. Only Count Two of Suarez and Sosa's third amended complaint, which alleged that Liberty breached its contract with the plaintiffs to repair their home, is relevant on appeal.

Liberty first demanded a defense in the Suarez-Sosa suit on June 28, 2011, but State Farm refused on grounds that Liberty was not an additional insured. On April 17, 2014, and after two more demands and two more refusals, Liberty produced its certificate of insurance and State Farm finally agreed to defend. Just over a year later, State Farm settled Suarez and Sosa's claims against Riteway as well as their vicarious liability claims against Liberty. A month after that, State Farm notified Liberty that having settled those claims, it no longer believed that it owed Liberty a defense. Liberty then settled the rest of the Suarez-Sosa claims itself. Critically, Liberty allocated all of the settlement funds to Count Two, the coverage status of which was disputed, and zero dollars to the remaining claims, which the parties agree were uncovered. Liberty sued State Farm in the Southern District of Florida for breach of an insurance

contract and a declaratory judgment. State Farm answered the complaint, including an affirmative defense that "assert[ed] that [State Farm's] duties to reimburse and indemnify Liberty Mutual with respect to any alleged loss, if any, are subject to . . . the limit of liability stated in the [c]ontractors [p]olicy . . . and to all other limitations of liability contained in the policies."

After discovery, the district court ruled on the parties' cross-motions for summary judgment. It held that Liberty's certificate of insurance entitled it to the same coverage as Riteway, but only under the umbrella policy. The court further concluded that although the umbrella policy covered Liberty's vicarious liability for Riteway's conduct, it did not cover direct liability for Liberty's own bad acts. On appeal, we affirmed in part and vacated and remanded in part, determining that the district court had made a factual mistake about which policies were referenced by Liberty's certificate of insurance. *Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.*, 770 F. App'x 475. On remand, the district court, analyzing the contractors policy, again held that Liberty was entitled to the same coverage as Riteway based on its certificate of insurance. It also concluded that Count Two of the Suarez-Sosa complaint was a covered claim that triggered State Farm's duty to defend and indemnify. The parties disputed damages, although they agreed that the damages issues were essentially legal rather than factual. The district court adopted a magistrate judge's report holding that Liberty's settlement with Suarez and Sosa bound State Farm. It also

held that State Farm had waived any affirmative defense based on the exhaustion of policy limits. State Farm timely appealed.

## II.　DISCUSSION

### A.　*Choice of Law and Erie*

To begin, we describe the choice of law principles that determine which state's law governs the dispute. As an appellate court reviewing a district court action sounding in diversity of citizenship, we apply the substantive law of the district court's home state, including its choice of law rules. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Because Liberty sued in the Southern District of Florida, we apply Florida's choice of law rules. And because neither party disputes that Florida substantive law governs under those choice of law rules, we apply Florida law on insurance and contract interpretation to the parties' disputes about coverage under the policies and the availability of damages.

### B.　*Liberty Was Entitled to the Same Coverage as Riteway under the Contractors Policy*

Having identified the proper state's substantive law, we turn to the merits. State Farm first argues that its provision of a certificate of insurance naming Liberty as an additional insured, without more, did not provide Liberty the same coverage as Riteway, the company that purchased the policy. Applying Florida insurance law, we disagree.

When a federal court sitting in diversity applies the law of the relevant state, it looks to the law as declared by that state's courts and its legislature. *Erie*, 304 U.S. at 78. That means that "[o]ur objective is to determine the issues of state law as we believe the Florida Supreme Court would." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). "In the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions of Florida's intermediate appellate courts." *Id.* If even the intermediate appellate courts fail to answer the question, we make an *Erie* guess that "attempt[s] to prognosticate how [Florida] state courts would resolve the . . . issue." *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995).

The specific question of Florida law at issue is whether a certificate of insurance labeling a third party as an additional insured, standing alone, entitles that third party to the same coverage as the primary insured. Although the Florida courts have not directly addressed this question, they have addressed a very similar one in a line of precedents about group insurance policies.

In *Moore v. Peninsular Life Insurance Company*, a Florida intermediate appellate court held that a certificate of insurance referencing a group health policy became a contract between the insurance company and the recipient, entitling that recipient to notice of a change in the master policy. 213 So. 2d 721, 722 (Fla. Dist. Ct. App. 1968). Four years later, another Florida court explained that "[w]hile the authorities are divided on the question, we believe the better view to be the one which holds that under group life

insurance policies there is a contract between the insurer and the individual insured, that the contract consists of both the master policy and the certificate of insurance construed together, and that ambiguities [o]r conflicts between the two must be resolved so as to provide the broadest coverage." *Equitable Life Assur. Soc. of U.S. v. Wagoner*, 269 So. 2d 747, 748 (Fla. Dist. Ct. App. 1972). We have relied on these precedents to decide similar issues. *See Davis v. Crown Life Ins. Co.*, 696 F.2d 1343, 1345–47 (11th Cir. 1983) (failure to recite a controlling provision from a master group life insurance policy in the certificate of insurance created an ambiguity to be resolved in favor of coverage).

There are two main differences between the policies here and those in the Florida cases discussed above. First, the contractors and umbrella policy were not group policies. They were issued to Riteway alone. Second, Liberty never paid premiums on Riteway's policies, unlike the recipients of a group health or life insurance policy. We can see no reason, however, for these differences to override Florida's general rule construing ambiguities in insurance contracts against insurers and in favor of broad coverage. *See Wagoner*, 269 So. 2d at 748; *DaCosta v. Gen. Guar. Ins. Co. of Fla.*, 226 So. 2d 104, 107 (Fla. 1969). Thus, our *Erie* guess is that, under Florida law, Liberty's certificate of insurance entitled it to the same coverage as Riteway under the contractors policy. That coverage was unmodified by State Farm's 2014 issuance of an additional insured endorsement because the endorsement issued years after Suarez and Sosa first filed suit in 2010. Such retroactive alterations

to limit coverage are forbidden by Florida law. *Sec. Ins. Co. of Hartford v. Baad*, 657 So. 2d 10, 10 (Fla. Dist. Ct. App. 1995).

### C.    *Liberty Was Entitled to Damages Equal to the Full Amount of its Settlement*

State Farm next argues that, even if Liberty had the same coverage as Riteway under the contractors policy (i.e., coverage for its own acts), it was still not entitled to damages stemming from its settlement. That argument consists of four sub-arguments. First, that Count Two of the Suarez-Sosa complaint, a claim for breach of a contract to repair, was not a covered claim under the policy. Second, that even if Count Two were a covered claim, Liberty's allocation of all settlement funds to that claim prevented the settlement from binding State Farm. Third, that even if the settlement were binding, State Farm's policy limits had been exhausted long before Liberty's settlement. And fourth, that Liberty's settlement exceeded the policy's limits even if prior exhaustion of those limits were unavailable as a defense. We conclude that each of State Farm's arguments is unavailing in the face of the applicable Florida law.

### 1.    The Contractors Policy Covered Count Two of the Suarez-Sosa Suit

State Farm first argues that Count Two of the Suarez-Sosa suit, which alleged that Liberty breached its contract to repair their home, was not a covered claim implicating its duty to indemnify under the contractors policy. We disagree.

Under Florida law, "[t]he duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured." *Laws. Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)). "The duty arises when the relevant pleadings allege facts that 'fairly and potentially bring the suit within policy coverage.'" *Id.* (citing *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (applying Florida law)). "If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." *Id.* at 1580–81. "Unlike the duty to defend, . . . an insurance company's duty to indemnify an insured party 'is narrower and is determined by the underlying facts adduced at trial or developed through discovery during the litigation.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1324 (11th Cir. 2014) (quoting *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006)). The duty to indemnify "is predicated upon a final judgment, settlement, or other final resolution of the underlying claims." *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1153 (S.D. Fla. 2015).

The contractors policy covered "those sums that the insured becomes legally obligated to pay as damages because of . . . property damage caused by an occurrence. . . ." Property damage included "physical injury to or destruction of tangible property, including all resulting loss of use of that property," as well as "loss of

use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property." An occurrence was defined as "an accident, including continuous or repeated exposure to the same general harmful conditions which result in . . . property damage." Under the policy, State Farm retained "the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false, or fraudulent."

First, we address the duty to defend. Suarez and Sosa's first amended complaint alleged that Liberty's negligence in making repairs severely damaged their home. These allegations "fairly and potentially [brought] the suit within policy coverage," which triggered State Farm's duty to defend. Liberty's complaint sought defense fees and costs beginning on June 28, 2011, and neither party has challenged the district court's holding that June 28 was the proper time to start the clock, so we leave that holding in place.

Next, we address the duty to indemnify. Here, the question is whether Count Two of Suarez and Sosa's third amended complaint, a claim for breach of a contract to repair, is a covered claim under the contractors policy. We hold that it is. State Farm argues that the breach of a contract to repair is not an "occurrence" and that the damages flowing from that breach are not "property damage" under the policy. But Count Two was based on property damage. It alleged that "[p]laintiffs have suffered damages as a result of [Liberty's] breach of its contract to repair the damages to Plaintiffs'

home. These damages include the damages and special damages in paragraphs 99-100 herein which are incorporated by reference." Paragraph ninety-nine alleged damages including "[t]he cost to replace the entire structure and adjoining structures." And paragraph one hundred explained those damages, alleging that "[a]s a result of the actions/inactions of Liberty . . . [p]laintiffs have suffered a complete loss of the use of their home. The home is uninhabitable. . . . [and] must be razed completely. . . ." Count Two also incorporated the complaint's broader factual allegations, which alleged in gory detail the string of "occurrences" by which Liberty's contract to repair the insureds' home ended up destroying it. These ranged from unpermitted demolitions and caving in the kitchen floor to unnecessarily removing core components of the home and systematically destroying floor joists. Such allegations and consequences fit under the labels of "occurrences" and "property damage" as defined by the policy.

Finally, State Farm argues that, as a matter of public policy, liability insurance policies cannot cover breach of contract claims in Florida as a general matter. We disagree. Florida's public policy is against allowing liability coverage for certain *intentional* acts. Whatever the scope of this public policy, it is clear that unintentional breaches of contract may be covered by liability insurance. *See U.S. Fire. Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 884 (Fla. 2007). The district court opinion State Farm cites to support its argument that public policy precludes reading the insurance policy to cover this contract claim, *Waste Corp. of Am., Inc. v. Genesis*

*Ins. Co.*, speaks in terms of "intentional breach of contract." 382 F. Supp. 2d 1349, 1354 (S.D. Fla. 2005) (citing *Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F. Supp. 2d 668, 695 (D. Tex. 2002)). And Count Two is anything but an intentional breach of contract claim, relying as it does on Riteway's parade of negligent acts during the repair to establish its claim for breach against Liberty. Thus, we agree with the district court that Count Two was a covered claim and State Farm owed Liberty a corresponding duty to indemnify.

## 2.    Liberty's Settlement of the Suarez-Sosa Suit Bound State Farm

Second, State Farm argues that, even if Count Two were a covered claim, it is not bound to pay the amount in Liberty's settlement agreement because Liberty allocated the entire sum of the settlement to Count Two. Again, we disagree.

Under Florida law, an insured that an insurer improperly fails to defend may settle the claims against it and sue its insurer for indemnification of the settlement amount. But if an insured enters a settlement that includes both covered and noncovered claims, it must allocate the settlement amount among the various claims to bind the insurer. *See Keller Indus., Inc. v. Emps. Mut. Liab. Ins. Co. of Wisc.*, 429 So. 2d 779, 780 (Fla. Dist. Ct. App. 1983); *see also Highland Holdings, Inc. v. Mid-Continent Cas. Co.*, Case No. 8:14-cv-1334-T-23TBM, 2016 WL 3447523, at *4 (M.D. Fla. June 23, 2016), *aff'd,* 687 F. App'x 819 (11th Cir. 2017). So when an insured

categorically fails to allocate funds when entering into a mixed settlement, the insured will be unable to recover.

State Farm would have us extend these precedents to provide that, in addition to allocating generally, an insured must allocate at least some funds to each claim in the settlement. That is, State Farm argues that an insured may only seek indemnification of a settlement if more than zero dollars is allocated to each claim in a complaint. This argument is not persuasive. There is no support for it in Florida law or any other state's law. And it makes very little practical sense and does little to protect insurers from collusive settlements. State Farm's rule, for example, would render Liberty's settlement non-binding as is, but not if Liberty had allocated one hundred dollars, or ten dollars, or even as little as one dollar to each non-covered claim. And an insurer can always challenge a collusive settlement by showing bad faith on the part of the settling insured, but that is something State Farm has not alleged in this case. *See Shawnee Auto Serv. Ctr., Ltd. v. Cont'l Cas. Co.*, 782 F. Supp. 1503, 1504–06 (D. Kan. 1992).

State Farm tries to support its proposed rule with *Wells v. Tallahassee Memorial Regional Medical Center., Inc.*, 659 So. 2d 249, 253–4 (Fla. 1995). But that decision is inapposite. *Wells* stands for the general proposition that a non-settling joint tortfeasor is not bound by the settlement of another joint tortfeasor as to the allocation of non-economic versus economic damages. But that has nothing to do with the circumstances of this case—when an insurer wrongfully fails to defend its insured and the insured reaches a

settlement with a plaintiff. In this situation, Florida courts have been clear, the insurer must pay the settlement so long as the insured makes an allocation between the various covered and non-covered claims and did not act in bad faith. *See Gallagher v. Dupont*, 918 So. 2d 342, 347–48 (Fla. Dist. Ct. App. 2005); *Keller Indus., Inc.*, 429 So. 2d at 780; *Universal Underwriters Ins. Corp. v. Reynolds*, 129 So. 2d 689, 691–92 (Fla. Dist. Ct. App. 1961). Because Liberty has done exactly that, its allocation of damages in the settlement binds State Farm.

### 3.    State Farm Waived the Affirmative Defense of Exhaustion of Policy Limits

Third, State Farm argues that, even if Count Two were covered and the settlement binding, it had exhausted the limits of the contractors policy by settling Suarez and Sosa's claims against Riteway and vicarious liability claims against Liberty. We disagree.

Under Florida and federal law, a failure to plead an affirmative defense generally waives the defense. *Jones v. Fla. Ins. Guar. Ass'n Inc.*, 908 So. 2d 435, 452 (Fla. 2005); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010). And although no Florida court has expressly held exhaustion to be an affirmative defense that must be pleaded or waived, the courts have consistently named it as such. *See Sheldon v. United Servs., Auto Ass'n*, 55 So. 3d 593, 594–95 (Fla. Dist. Ct. App. 2010); *Diamond State Ins. Co. v. Fla. Dep't of Child. and Fams.*, 305 So. 3d 59, 61 (Fla. Dist. Ct. App. 2019). Thus, we conclude that exhaustion was an affirmative defense that State Farm had to plead or waive.

The next question is whether State Farm's fifth affirmative defense adequately pleaded exhaustion. We conclude that it did not. We have explained that "a defendant raising an affirmative defense must 'affirmatively state it.'" *MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1337 (11th Cir. 2022) (quoting FED. R. CIV. P. 8(c)). That standard "requires, at the minimum, putting the plaintiff on notice of the nature of the defense." *Id.* State Farm agrees, arguing in its brief that its fifth affirmative defense "set out the factual basis for the defense, thus providing fair notice," But State Farm's fifth affirmative defense did nothing of the sort. Instead, the defense asserted only that State Farm's liability was "subject to . . . the limit of liability stated in the [c]ontractors [p]olicy . . . and to all other limitations of liability contained in the policies." This boilerplate reference to the policy does not mention exhaustion, cite any policy language, or identify the settlement payments to Suarez and Sosa that would have constituted exhaustion. In other words, it does not set out the factual basis for an exhaustion defense or provide the plaintiff with fair notice of such a defense. Thus, State Farm waived any defense of its prior exhaustion of the policy limits.

### 4.    The Contractors Policy's Aggregate Limit Applies

Finally, State Farm argues that even if it loses on all of the arguments above, Liberty's settlement alone exceeds the contractors policy's limits. Without an allegation or finding of bad faith, State Farm contends, a judgment against an insurer may not exceed its policy limits. This is a correct statement of Florida law, *State*

20-12970                Opinion of the Court                    19

*Farm Mut. Auto Ins. Co. v. Goddard*, 936 So. 2d 5, 9–10 (Fla. Dist. Ct. App. 2006) ("in the absence of a judicial finding of bad faith, in an action against an insurer for damages under a policy of insurance, a final judgment against the insurer cannot exceed the stated policy limits"), but one that is inapplicable here because Count Two of the Suarez-Sosa complaint alleged multiple "occurrences," triggering the contractors policy's aggregate limit. Because the higher aggregate limit was equal to Liberty's settlement, its operation prevented an excess judgment.

Under Florida law, the "cause theory" determines the number of "occurrences" under an insurance policy. *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 269–270 (Fla. 2003). The Florida Supreme Court has explained that an "occurrence" under the cause theory "is the act that causes the damage, which is neither expected nor intended from the standpoint of the insured." *Id.* at 271. And the "act" is a distinct concept from a plaintiff's underlying legal theory. *Id.*

Count Two of the Suarez-Sosa complaint alleged that Liberty breached its contract to repair their home. But beyond that cause of action, Count Two also incorporated allegations of four distinct groupings of misconduct over the course of the disastrous repair that allegedly constituted breach and contributed to the overall damage to the home. Nor were the various instances of alleged misconduct so temporally close as to blend into a single "occurrence." Instead, one was pegged to a single day and three others to separate time-periods between five and twelve days. Among all

the allegations, there were only two days of overlap. Thus, Count Two of the Suarez-Sosa suit alleged multiple "occurrences," which triggered the contractors policy's aggregate limit. That higher limit meant that the district court's judgment was not in excess of the contractors policy's stated limits.

## III.    CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.